# Glidden *versus* Strupler.

1. A married woman has no capacity to contract for the sale of her land or to convey it, except in the precise statutory mode.

2. At law *femes covert* have no capacity to make contracts. Their contracts are nullities, and in this respect equity follows the law.

3. In this state a married woman's power to convey is derived from the Act of 1770, and in regard to powers in their nature statutable, equity follows the law, however meritorious the consideration.

4. Equity will not aid defects which are of the essence of the power, nor supply any circumstance for want of which the legislature has declared the instrument void.

5. The contract of a married woman being void, it cannot be ratified unless by deed in the mode described by the statute.

6. Positive acts of encouragement which might operate to estop one *sui juris*, will not affect one under legal disability: and a wife can do or forbear to do no act to affect her property, unless settled to her separate use.

7. A married woman by agreement, signed only by herself and without an acknowledgment, contracted to sell land: she received one year's interest and a small part of the purchase-money. The purchaser took possession and made improvements with her knowledge and encouragement. *Held*, that neither the principle of estoppel nor compensation would prevent her recovering the land.

ERROR to the Court of Common Pleas of *Susquehanna county*.

This was an action of ejectment, by George A. Strupler and Susan his wife, against B. Glidden, for a lot of land, the property of the wife. Mrs. Strupler entered into a contract, signed only by herself and not acknowledged, to sell her lot for $65. Ten dollars of the purchase-money and a year's interest were paid to her. The purchaser took possession, commenced building a black-smith shop which was blown down, he hauled the materials away, and assigned his contract to the defendant, who erected on the lot a house worth $350. The Struplers lived on the adjoining lot whilst the improvements were being made, and made no objection. The husband and Glidden referred a dispute about their boundary line to referees to fix. Mrs. Strupler expressed a desire that Glidden would go on with his building, and that he would not put windows in the side of the house next to her, and Glidden accord-

[Glidden *v.* Strupler.]

ingly did not put them in. She also expressed satisfaction that he had got the property.

The court below held that these facts did not estop the plaintiffs from recovering, and a verdict being rendered for them, this was the substantial error assigned.

*Bentley, Fitch & Bentley,* for plaintiff in error.—No principle is better settled in Pennsylvania, nor founded on more solid consideration of equity and public utility, than that if one *knowingly,* though *passively by looking on,* suffers another to purchase and spend money on land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to exercise his legal right against such person: Glass *v.* Warwick, 4 Wright 140; Carr *v.* Wallace, 7 Watts 400; Smith *v.* Warden, 7 Harris 430; McKelvey *v.* Truby, 4 W. & S. 323; Hamilton *v.* Hamilton, 4 Barr 195; Miller *v.* Cresson, 5 W. & S. 302. And the principle should apply to *feme coverts* as well as to other persons: Dawson's Appeal; Couch *v.* Sutton, 1 Grant 114; Cord on Married Women, § 246; Patterson *v.* Robinson, 1 Casey 81.

*R. B. Little,* for defendants in error.—The separate deed of a married woman is absolutely void; and that, even when her husband has abandoned her: Thorndell *v.* Morrison, 1 Casey 326; Stoops *v.* Blackford, 3 Id. 213; Pettit *v.* Fretz, 9 Id. 118. It is void whether against her or her husband, even although a full consideration has been paid to her for the land conveyed: Richards *v.* McClelland, 5 Casey 385; Keen *v.* Coleman, 3 Wright 299; Rumfelt *v.* Clemens, 10 Id. 455; Kirkland *v.* Hepselgefser, 2 Grant 84; Peck *v.* Ward, 6 Harris 506; Keiper *v.* Helfricker, 6 Wright 325; Steinman *v.* Ewing, 7 Id. 63; Wilt *v.* Welsh, 6 Watts 9.

The opinion of the court was delivered, October 17th 1866, by

AGNEW, J.—This is a case of alleged equitable estoppel. Mrs. Strupler contracted to sell her real estate (a small village lot) for $65, by an agreement signed by herself alone and without any acknowledgment. Ten dollars and a year's interest were paid. Conklin the purchaser went into possession, and commenced to build a blacksmith shop, which was blown down and the materials hauled away. He assigned his contract to Esquire Glidden, who erected a house worth about $350.

The facts relied on to estop Mrs. Strupler's recovery are these: The Struplers lived on an adjoining lot during the time Glidden's improvements were being made, and made no objection to their erection. Strupler, at one time, believing that Glidden was coming across his line, agreed to leave it to certain persons to ascertain and fix the boundary, which was done. To Diamtra

2 P. F. SMITH—26

[Glidden *v.* Strupler.]

Scott, a neighbour, Mrs. Strupler expressed a desire that Glidden should go on with his building, in consequence of her children getting hurt by playing on the timbers; and also her hope that he would not put windows in the side of the house next to hers, as the men would be looking into her kitchen. She requested Mrs. Scott to tell Glidden about the windows. She also expressed herself as glad that Glidden had got the property, because there would be no blacksmith shop, which Conklin had intended to build. Mrs. Scott mentioned the windows to Glidden, who afterwards told Morris, his carpenter, that he had been told Mrs. Strupler did not want the windows on that side, and he was not going to put them in. In all this it is to be noticed that Mrs. Strupler did no positive act to mislead, but that any encouragement she gave arose from her silence while she knew what was going on, and from conduct which indicated her acquiescence and her satisfaction with the sale.

To clear the case of misconception it is necessary to remark, that the doctrine of equitable ejectment and of rescission of contract has no place in the argument. The ejectment is upon a legal title, and the plaintiff has not come into chancery to seek relief. The first admission under the agreement of counsel is, that the legal title is in Susan Strupler. The defendants set up the contract of sale and the estoppel as a defence in equity. The maxim that a plaintiff seeking equity must first do equity, is therefore not applicable, and the defendants must show a clear subsisting equity to prevent a recovery at law.

It is not a case of rescission. The plaintiff does not ask us to set aside a contract which had a legal existence, but has been terminated by its own terms, or by reason of some default in the performance. The right of action is on the ground that the contract never had an existence because of a want of capacity to make it. It is not to be doubted that the contract is void, and had neither a legal nor an equitable obligation. A married woman has no capacity to contract for the sale of her real estate, or to convey it except in the precise statutory mode conferring the power. The authorities are numerous: McClure *v.* Douthitt, 6 Barr 414; Trimmer *v.* Heagy, 4 Harris 484; Peck *v.* Ward, 6 Id. 506; Ulp *v.* Campbell, 7 Id. 361; Thorndell *v.* Morrison, 1 Casey 326; Miltenberger *v.* Croyle, 3 Id. 170; Stoops *v.* Blackford, 3 Id. 213; Roseburg's Executors *v.* Sterling's Heirs, 3 Id. 292; Richards *v.* McCllelland, 5 Id. 385; Pettit *v.* Fretz, 9 Id. 118; Kirkland *v.* Hepselgefser, 2 Grant 84; Rumfelt *v.* Clemens, 10 Wright 455. Cord, in his work on The Rights of Married Women, § 416, states the doctrine in broad terms. Nor can equity breathe life into a legal nonentity. Story, in his Equity, § 243, says, that at law *femes covert*, generally speaking, have no capacity to do any acts or enter into any contracts, and such acts

[Glidden v. Strupler.]

and contracts are treated as mere nullities, and in this respect equity follows the law. In section 177 he says, that in regard to powers that are in their nature statutable, equity must follow the law, be the consideration ever so meritorious. In this state a married woman's power to convey is now derived from the Act of 24th February 1770. Again, in the same section he remarks, that the powers of courts of equity do not extend to the supplying of any circumstance, for the want of which the legislature *has* declared the instrument void, for otherwise equity would in effect defeat the very policy of the legislative enactments. In § 97 he says, equity will not aid defects which are of the very essence or substance of the power, as, for instance, if the power be executed without the *consent* of parties who are required to consent to it. In this case the husband did not join in the execution ; and this, it has been repeatedly decided, is the only mode by which his consent can be shown : see also §§ 64–3–96. In Trimmer *v.* Heagy, 4 Harris 484, this court not only declared a married woman's deed void, but sustained the rejection of parol evidence of the husband's consent, saying the execution of the deed in the mode pointed out by the Act of 1770 was the only evidence of his consent.

In Dorrance *v.* Scott, 3 Whart. 309, and Caldwell *v.* Walters, 6 Harris 79, not only was her deed declared to be absolutely void, but a judgment and sheriff's sale founded upon it held to confer no title on the purchaser. So absolutely void is her bond, that Judge Chambers says, in the latter case, she may give coverture in evidence under the plea of *non est factum.* In Pearsall *v.* Chapin, Lowrie, C. J., discussed at large the import of the term *void,* and therein he not only defines *void contracts* to be those forbidden by law or the nature of things, but he expressly classifies as such the bonds of married women. The contract to convey being absolutely void because of incapacity, its ratification is equally forbidden unless by deed in the mode prescribed by the statute. No multiplication of deeds (and they are the most solemn acts *in pais* by which title can be transferred) will serve to ratify the void conveyance, unless made according to the statutory direction. Much less can express ratification by parol or expressions of satisfaction infuse life into that which has no vitality. How, then, is it possible mere acts can be more efficacious that merely indicate the intention to transfer, which the writing has already expressed in terms explicit and emphatic ? Acquiescence in, or acknowledgment of the invalid act, cannot be invested with greater virtue or vigour than the deed itself by which the act was done. The policy of the law which denies the capacity to do the act, as clearly denies the capacity to confirm it except in the legal mode.

The next point is that of estoppel. If, through the administration of equity, we can produce a result which the law denies *ab*

[Glidden v. Strupler.]

*initio*, on grounds of public policy: then estoppel or compensation, its equitable equivalent, will accomplish what the law and policy have forbidden. But we have seen that in such a case equity does not overturn but follows the law: Story's Equity, §§ 64 a, 3, 96, 97, 177, 243. Our own cases fully establish that there is no such doctrine of equity. In the first place, the receipt of the consideration by a married woman, is no ground for the interposition of equity. If it were, then in no case where a *feme covert* has received a *quid pro quo*, would her legal incapacity protect her. It would be but technical, and like a penalty would be relieved against. This would be a flat denial of a legislative policy, founded on the most important reasons, entering into the very constitution of society; and social order must lie at the feet of chancery. I cannot express these reasons better than the present chief justice has done in Pettit v. Fretz, 9 Casey 118, denying the same effect to the Act of 1848: "It is impossible," he said, "to shut our eyes to the consequences of such a construction. We cannot fail to see it would work a repeal of an old statute of conveyancing, which the legislature exhibited no intention to repeal; that it would change the law of actions, that it would expose wives continually to the hazards of barter and business, without the aid and protection which the common law entitled her to receive from her husband; that it would dethrone him from the headship of the family, take her thoughts and time from the care of the family, and introduce confusion and discord, which would, in their turn, entail upon the public, evils tenfold greater than those which the statute intended to remedy." In Thorndell v. Morrison, 1 Casey 326, a married woman's deed was held to be totally void, even in a case of desertion by the husband, when she was left dependent on herself. It was in this case, Lewis, C. J., in a short concurring opinion, said, "the payment of the consideration would afford an equity in a case of desertion;" but the very point arose afterwards in Richards v. McClelland, 5 Casey 385, and seems to have been elaborately argued. It was held, that her deed was void, even though the full consideration was paid; and that desertion and the use of the proceeds of sale in her maintenance, were no bar to her recovery. The point arose on a bill of exception to the rejection of the evidence, which of course was error if compensation or equitable estoppel could be set up. In the present case there was neither desertion nor payment of the consideration, except ten dollars and one year's interest.

The same reasons and authorities equally forbid estoppel by improvements, or compensation, its equivalent. If a *feme covert* can be improved out of her estate, her legal incapacity is only nominal. The purchaser aware of the inherent defect in his title of which the article of agreement immediately notifies him, has only to improve to any extent to suit himself, and he perfects his equity. The

[Glidden v. Strupler.]

greater his expenditure and more disproportionate to the price, the more difficult he makes compensation by the wife who may possess no estate. He knows she is a married woman, and has no capacity to sell or to convey to him in this mode. He knows that her husband was not joined with her, and that she has not acknowledged the writing according to the requirement of the statute ; and he knows she cannot ratify by parol, or by acts of acknowledgment or acquiescence, or even by writing not in the statutory form. In Crest v. Jack, 3 Watts 238, it is said that equity will not relieve one who is perfectly acquainted with his rights or has the means of becoming so, and yet wilfully undertakes to proceed in expending money on the land of another, without his leave. This ignorance, if it exists, is wilful, and he acts at his peril. In Carr v. Wallace, 7 Watts 394, a leading case of estoppel by improvement, Judge Rogers recognised this doctrine, and added: "He has no right to complain, because he is not deceived, it is his own fault. He in fact stands in the situation of a wrongdoer." This being the law when the party to be estopped is under no legal disability, how much stronger the principle becomes when she is one from whom the capacity to act is taken, on purpose to deprive her of the power to injure herself and others. In Alexander v. Kerr, 2 Rawle 90, C. J. Gibson declares that even positive misrepresentation will not give an equity, when the party has the knowledge of the true state of the case.

In Gregg v. Patterson, 9 W. & S. 209, 210, where one purchased at sheriff's sale under a joint execution, the title of two tenants in common, but where the judgment was in fact against one only, it was held that the heirs of the tenant against whom no judgment was rendered, could recover without payment for valuable improvements made by a subsequent purchaser of the sheriffs' title. The duty was to inspect his title before he ventured to improve. McAninch v. Laughlin, 1 Harris 371, decides that if the facts are known to the parties, or are equally within their reach, a mistake as to their legal effect is no ground of equitable relief. The doctrine of equitable estoppel is elaborately discussed by our brother Strong in Hill v. Epley, 7 Casey 333 ; resulting in the same conclusion that the party must be misled to his hurt, and therefore, if the truth be known to both parties, or if they have an equal means of knowledge, there can be no estoppel.

In this case, added to the equal source of knowledge, there is the further element of legal incapacity, a knowledge of which is always imputed, and in this case an admitted fact, which takes away all claims to equity. Positive acts of encouragement that sometimes operate to estop one sui juris, will not affect one under a legal disability. In Rogers v. Walker, 6 Barr 374, deciding

[Glidden *v.* Strupler.]

that a purchaser from a lunatic has no equity to be reimbursed for his improvements, Gibson, C. J., said the plaintiff, therefore, had a clear title at law, and what right had the defendant to con-trol it at equity? Only the right he may be supposed to have derived from his bargain with an insane woman, who was the object of protection in equity as well as in law. No right can spring from a void and prohibited contract, and the defendants had none. The same doctrine is held in the same book in McClure *v.* Douthitt, page 414, a case of exchange of lands in 1805, when the wife declared herself pleased with the exchange, and the party made valuable improvements, and continued in possession nearly forty years. Gibson, C. J., said, nor is the point of equitable estoppel better sustained. As a wife's civil existence is extinguished in that of her husband, who is her substitute and representative, she can do, or forbear to do, no act to affect her property, unless it has been settled to her separate use. Additional force is given to these principles by another line of decisions. Incapacity for protection's sake is necessarily a pervading principle. In Keen *v.* Coleman, 3 Wright 299, it was held that the representation of a *feme covert* at the time of executing a bond that she was a widow, in reply to the direct question, is no ground of estoppel. Lowrie, C. J. saying: " If a legal incapacity can be removed by a fraudulent representation of capacity, then the legal incapacity would have only a moral force, or bond, which is absurd." In that case the court waived the question whether an action for deceit would lie. But this afterwards came up directly in the case of Keen *v.* Hartman, 12 Wright 497, where it was held no action for the deceit would lie, the liability of a married woman for torts being confined to those denominated *torts simpliciter*, and that the immunity of a *feme covert*, like that of an infant, is substantial, and cannot be taken away by a mere change in the mode of enforcing the liability. Precisely so here. What immunity or protection would she have from her incapacity to alienate her property, if it could be removed by changing the form of action from law to equity? Why should she have a capacity to charge herself with improvements, even by express license to make them, on property she has never legally alienated? Even her valid deed with a covenant of warranty would not extend to cover improvements if the title proved defective.

How would a wife stand if the doctrine of equitable compensation for the price or for improvements were to be applied to her? She cannot refund the price after it has been expended by her husband or herself. He may be too poor or unwilling to refund, or he may have used coercion to sell in order to pocket the proceeds. And if willing to pay back what she herself has expended, when is his security to be refunded?

As to the improvements, no matter what disproportion they

[Glidden v. Strupler.]

bear to the price, without a separate estate she cannot refund them, even if the price of the estate be yet in her hands. A purchaser erects expensive buildings, mills, factories, or what suits his taste or employments, and the greater the expenditure the higher his equity. Must the wife pay for them whether she has funds or not, whether her husband will advance or not, or whether the improvements are entirely beyond her condition in life or unsuited to her capabilities to manage or to enjoy? It would often drive her into a business neither she nor her husband is competent to perform, or compel her to sell far below the value assessed by a jury. It would often be better for her to lose her estate than to pay for the improvements. And even if the husband be willing to advance, what security will he obtain for his money? Will he have a lien for the sum advanced, or will he become a tenant in common to the extent of the value of the improvements? Sustain the doctrine of compensation, and all the consequences so vividly depicted by the chief justice in Pettit v. Fretz's Executors must ensue.

We have decided the point of this case in Rumfelt v. Clemens, 10 Wright 455, but that decision being made in the absence of two of the judges and with a dissent, it has been necessary to examine the doctrine of estoppel and compensation more fully. In conclusion we must say, that this doctrine is contrary to principle enforced by a vast volume of authority, destructive of the rights of married women, and as clearly denied by equity as it is forbidden by law.

Judgment affirmed.

Thompson, J., dissented.