BELLE ISLE CORPORATION, a Delaware corporation, et al.,

Respondents Below, Appellants,

*vs.*

CHARLES A. CORCORAN, T. LEONARD MACBEAN, ET AL.,

Petitioners Below, Appellees.

BELLE ISLE CORPORATION, a Delaware corporation, et al.,

Defendants Below, Appellants,

*vs.*

AGNES B. APPON, CHARLES A. CORCORAN, ET. AL.,

Complainants Below, Appellees.

*Supreme Court, On Appeal, Sept. 20, 1946.*

RICHARDS, C.J., SPEAKMAN, TERRY, CAREY and PEARSON, JJ., sitting.

*Leonard G. Hagner,* for appellants.

*Stewart Lynch,* for appellees.

TERRY, Judge, delivering the opinion of the court:

These cases concern two appeals from decrees heretofore entered in the Court of Chancery in and for New Castle County. (For opinions of the court below, see *ante p.* 122, 46 *A.* 2d 749, *ante p.* 261, 49 *A.* 2d 5.) Both cases will be

considered and determined in this opinion, yet the identity of each will be preserved throughout.

The principal question involved in the first appeal relates to the validity of a certain instrument dated May 27, 1939. The question presented in the second appeal relates to the validity of an election of directors of Belle Isle Corporation, which took place at the special annual meeting of the stockholders on September 21, 1945. Our consideration of the first appeal will be predicated upon the proper construction of *Section* 18 *of the Delaware Corporation Law, Rev. Code* 1935, § 2050, together with certain factual circumstances as revealed by the record. Belle Isle Corporation, one of the appellants, was organized under the provisions of the Delaware Corporation Law in 1928 for the purpose of acquiring, holding and leasing land and mineral rights. As of the date of the filing of the bill of complaint below, the corporation owned property in St. Mary's Parish, Louisiana, which it held under lease in order that they might develop oil, gas, sulphur and salt believed to be, and found, present in said Belle Isle located in said Parish.

Belle Isle in the early stages of its corporate existence was without assured income, and the need of financial assistance was ever present if the corporation was to pay its normal corporate expenses, including the exploration of the properties it held under lease.

In order to obtain the required financial assistance to further the objects designed to be accomplished, a voting trust agreement was entered into by and between certain common stockholders of the corporation on January 22, 1929 for the duration of 10 years. The holders of the stock

and parties to the voting trust agreement were Winfield A. Huppuch, Edward F. Irish, Roderick Begg, Gustavus A. Rogers and T. Leonard MacBean.

On December 15, 1938 the original voting trust agreement of January, 1929 was extended for a period of five years, terminating on January 22, 1944. On May 27, 1939 a certain instrument was executed, which is contended by the appellees to be a further extension of the voting trust agreement for a term terminating on January 22, 1949. The appellees argue that the instrument executed as of May 27 did not have such effect, as it did not comply with *Section* 18 *of the Delaware Corporation Law* and is therefore invalid and of no force and effect. The corporation has an authorized capital of 1,000,000 shares of common stock with a par value of 20 cents per share. Nine hundred ninety-one thousand two hundred sixty-seven shares are issued and outstanding, of which 224,892 shares are held by the public and 766,375 shares are held in the names of the voting trustees.

The complainants below, now appellees, sought the aid of the Court of Chancery to have the instrument dated May 27 decreed illegal and void, and that the common stock registered in the names of the voting trustees be ordered to be delivered to the present holders of the voting trust certificates. And, further, that the deposit of shares of common stock with the voting trustees be decreed to be illegal and void, and the voting trustees directed to assign and deliver to the holders of the voting trust certificates the common shares to which each would be entitled upon the surrender of said certificates to the voting trustees. There exists no controversy whatsoever concerning the original voting trust agreement dated January 22, 1929, or the extension thereof dated as of December 15, 1938.

The appellants assert that the instrument dated May 27, 1939 constituted a valid extension or a valid amendment of a prior extension of said voting trust agreement dated

January, 1929, or in the alternative said instrument of May 27, 1939 constituted a new and independent voting trust agreement which is valid and subsistent.

The appellants further contend that MacBean is guilty of misconduct in the management of corporate affairs, and that the complainants are under his domination and control and have instituted these actions at his request; therefore, they argue, that the appellees are estopped to deny the validity of the instrument of May 27, or precluded from asserting its invalidity under the doctrine of clean hands.

The pertinent provisions of *Section* 18 *of the Delaware. Corporation Law* are as follows:

"At any time within one year prior to the time of expiration of any such voting trust agreement as originally fixed or as extended as herein provided, one or more beneficiaries of the trust under such voting trust agreement may, by agreement in writing and with the written consent of such Voting Trustees, .extend the duration of such voting trust agreement for an additional period not exceeding ten years. Said Voting Trustees shall, prior to the time of expiration of any such voting trust agreement, as originally fixed or as previously extended, as the case may be, file in the principal office of the corporation in the State of Delaware a copy of such extension agreement and of their consent thereto, and thereupon the duration of such voting trust agreement shall be extended for the period fixed in such extension agreement; provided, however, that no such extension agreement shall affect the rights or obligations of persons not parties thereto."

The instrument dated May 27, 1939 is entitled "Extension of Voting Trust Agreement" and provides in part as follows:

"Witnesseth: In consideration of the premises and for other good and valuable considerations hereby acknowledged to have been given and received, the Parties hereto, each for himself and without regard to the joinder or validity of the joinder of any other Voting Trust Certificate holder do hereby covenant and agree that a certain Voting Trust Agreement dated January 22, 1929 by and between certain stockholders of the said Belle Isle Corporation and the above-named Voting Trustees which was duly extended by written agreement dated De-

cember 15, 1938, until January 22, 1944, do hereby covenant and agree that said Voting Trust Agreement be and the same hereby is further extended until January 22, 1949 and do further agree that said Agreement be and it hereby is amended by modifying the terms of Clauses 1, 3, 5, 6, 11 and 12 thereof and by inserting therein a new Clause 2A * * *."

The amendments referred to are summarized in the appellants' brief as follows:

(1) Provides for and sets forth a new form of voting trust certificate.

(2) Provides for 10 voting trustees instead of five, and provides for appointment of additional trustees.

(3) Changes the manner of registering the stock deposited.

(4) Provides that any stockholder may become a party by merely depositing his stock with the voting trustees without the necessity of subscribing to the agreement.

(5) Provides for the extensions of the agreement.

(6) The words "80 per cent" are substituted in place of the words "four-fifths."

The agreement provides that voting trust certificates to be issued under it should include the following:

"This Certificate is issued under and pursuant to the terms and conditions of a certain Voting Trust Agreement dated as of the 22nd day of January, 1929, which was duly amended and extended on May 27, 1939, a copy of which is filed with said Voting Trustees and said Company, and is transferable on the books of said Voting Trustees by the registered owner hereof in person or by attorney duly authorized, according to the rules established for the purpose of said Voting Trustees, upon the surrender of this certificate duly endorsed, and until so transferred said Voting Trustees may treat the registered owner as owner hereof for all purposes whatsoever except that no delivery of such certificates of stock shall be made without the surrender hereof.

"The original holder of this Certificate and all transferees, by accepting a new certificate in lieu of the one surrendered, shall be deemed

to have assented to the terms and conditions of the Voting Trust Agreement dated as of the 22nd day of January, 1929, as amended and extended on May 27, 1939, pursuant to the terms of which this Certificate is issued."

The first question to be determined is whether the instrument dated the 27th of May, 1939, carrying the title "Extension of Voting Trust Agreement," was intended to be in fact a further extension of the January 22, 1929 voting trust agreement, or whether it was intended to be a new or independent voting trust agreement. It not only would do violence to the textual reading of the instrument, but also by necessity would require a rewriting of the phraseology of said instrument if an interpretation is to be had from the language employed that the instrument constituted a new or independent voting trust agreement as of that date. It seems to us that the language of the agreement, in its context, bears no other reasonable construction than that the parties attempted to extend—that is, prolong—the period of legal effectiveness of the pre-existing voting trust which had been created by the 1929 agreement and once extended by the 1938 agreement. Nor do we find any innovations under the instrument of May 27, 1939 which are sufficient to enable us to conclude, irrespective of the terminology employed, that it should be held to be a new or independent agreement for the reasons of alterations or additions as therein contained separate and apart from the original agreement and the first extension thereof. Further, it should be said that we find no facts whatsoever upon which we could conclude that the parties terminated the agreement of December, 1938, and contemporaneously with such termination entered into a new voting trust agreement as of May 27, 1939. The instrument of May 27 is not a new or independent voting trust agreement.

Now the next question which remains is, Did the attempted extension meet the specific limitations of *Section 18 of the Corporation Law?*

Voting trusts and voting trust agreements with respect

to Delaware corporations derive their validity from limited statutory authorization. *Perry v. Missouri-Kansas Pipe Line Co.*, 22 *Del. Ch.* 33, 191 *A.* 823.

The appellants argue that the use of the word "may," as the same appears in *Section* 18, connotes that the statute as to extensions is permissive, but does not preclude extensions at any time. It is obvious to us that the permission granted under the statute goes to the election given to extend a voting trust agreement. The time of the execution of the extension is fixed by the statute. A voting trust agreement under *Section* 18 may be extended for a period not greater than 10 years, but the instrument carrying such extension must be executed within a period of one year immediately preceding the expiration date of the agreement sought to be extended. The contemplated extension here is invalid and of no effect, since it violated the requirements of *Section* 18 aforesaid.

Although we have held the May 27 instrument not to be a valid extension of the voting trust agreement of 1929, and not to constitute a new and independent agreement, nevertheless, the appellants contend that the appellees should not be afforded the aid of this court for the reasons that they are estopped to deny the validity of the May 27 instrument, or that they should be held to be precluded from asserting its invalidity under the doctrine of clean hands. Admitting arguendo that MacBean was guilty of misconduct concerning corporate affairs, and that the appellees are under his domination and control, nevertheless, the public policy of this State, as announced under *Section* 18 of the *Corporation Act,* will not be disturbed by the application of either doctrine. *Gaskill v. Gladys Belle Oil Co.*, 16 *Del. Ch.* 289, 146 *A.* 337; 3 *Pomeroy's Equity Jurisprudence,* (*5th Ed.*) *Par.* 403, *Par.* 941, *Note 9*; *Aldridge v. Franco Wyoming Oil Co.*, 24 *Del. Ch.* 126, 7 *A.* 2d 753; 19 *Am. Jur.* 638; *Menzel v. Niles Co.,* 86 *Colo.* 320, 281 *P.* 364, 65 *A.L.R.* 995; *Glidden v. Strupler*, 52 *Pa.* 400.

The appellants rely to some extent upon the theory that the May 27 instrument cannot be attacked by the appellees, for the reasons that it was unanimously approved and that the parties acted thereunder. We find no merit whatsoever to these contentions, as such do not furnish the foundation for a legal excuse for not complying with the limited provisions of *Section* 18 of the *Corporation Act*. *Gaskill v. Gladys Belle Oil Co.*, 16 *Del. Ch.* 289, 143 *A.* 337.

Necessity does not require a detailed statement of the averments set forth in the bill of complaint and answer as filed. It will suffice to say that they are ably set out by the learned Vice-Chancellor in his opinion below, *ante p.* 122, 46 *A.* 2d 749.

The second appeal concerns the validity of an election of directors of the Belle Isle Corporation, which took place at the special annual meeting of the stockholders on September 21, 1945. *Section* 31 *of the Corporation Act, Rev. Code* 1935, § 2063, pertaining to the review of corporate elections is involved.

The voting trustees acting in pursuance to the May 27, 1939 instrument caused to be voted approximately 766,-375 shares of the common stock, whereas only 224,892 shares of common stock were held by other persons. It is quite clear that the votes cast by the voting trustees determined the election of directors at the September 21 stockholders' meeting. Concluding as we have that the instrument of May 27, 1939 was invalid as an extension of the 1929 voting trust agreement, and that it did not constitute a new or independent voting trust agreement, certainly no election could be upheld where the determinative vote resulted from the votes cast by voting trustees acting in pursuance thereof.

The decrees as respectively entered below are hereby affirmed with instructions that the court below take whatever further proceedings that may be required.