## Taylor v. Pepper

*Stephen M. Feldman*, for plaintiffs.
*Stephen J. Mathes, Jean B. Green* and *Martin L. Haines*, for defendants.

AVRIGIAN, *J.*, April 20, 1979—This is an action in equity in which plaintiffs seek to have this court declare as null and void the following: a 1965 voting trust agreement; a March 6, 1974, election of corporate directors; and a June 26, 1974, exercise of an option to purchase all of plaintiffs stock in J. W. Pepper & Son, Inc. (hereinafter referred to as Corporation).[1] Plaintiffs allege that the 1965 voting trust agreement to which they were settlors was an illegal extension of an earlier 1960 voting trust agreement, under the Act of May 5, 1933, P.L. 364, art. V, sec. 511, as amended, 15 P.S. §1511(D). It is argued further, that since the trustee was without authority to vote plaintiffs' shares when the stock option was exercised, then that vote should be set

---

1. At trial, plaintiffs withdrew their allegations of corporate waste, fraud and improper withholding of dividends and also their request for relief in the form of an accounting, the payment of dividends and the appointment of a receiver.

aside.[2] Defendants joined Martin L. Haines as an additional defendant and counterclaimed against plaintiffs on two counts. The first count sought restitution from the plaintiffs of $234,000 paid to Mrs. Margaret Winifred Burtch in accordance with an employment agreement.[3] The second count, named Dean C. Burtch as sole counterclaimant, and alleged detrimental reliance upon the enforceability of the voting trust and stock option agreements and sought damages in excess of $10,000.

## FINDINGS OF FACT

1. J. W. Pepper & Son, Inc. is a corporation located in Valley Forge, Montgomery County, Pa. It is involved in the mail order business and retail sale of educational sheet music.

2. Plaintiffs are Irene Burtch Taylor and Julia Burtch Rohloff. They are sisters.

3. Defendants are as follows: (A) J. W. Pepper & Sons, Inc.; (B) Dean C. Burtch is the president, chairman of the board of directors of the corporation and trustee under the 1960 and 1965 voting trusts; (C) Ron Rowe is the executive vice presi-

---

2. Plaintiffs in their brief in opposition to defendant's motion for a nonsuit withdrew an alternative theory of invalidating the vote to exercise the stock option, which was that at the time of the vote in question the trustee allegedly suffered an impermissable conflict of interest as trustee and director thereby breaching his fiduciary duty to the plaintiffs.

3. At trial, this court ruled that Mrs. Margaret W. Burtch, having never been made a party to the proceedings, was an indispensible party to the first count of the counterclaim since her rights would have been substantially affected.

dent, general manager and director of the corporation; (D) Richard E. Thorne is the vice president for sales and a director of the corporation; (E) Henry S. Ross, Esq., is the secretary, and was a director of the corporation at the time of the exercise of the stock option by the corporation; (F) Peter C. Demetri, Esq., is the assistant secretary and a director of the corporation; (G) Edward McGovern is the assistant secretary and assistant treasurer of the corporation; (H) Bernard Deitz is the treasurer of the corporation.

4. Martin L. Haines is an additional defendant.

5. Mrs. Margaret Winifred Burtch is the widow of Harold W. Burtch and the mother of Irene Burtch Taylor, Julia Burtch Rohloff and Dean C. Burtch.

6. On January 27, 1960, the corporation was authorized to issue 5,000 shares of common stock at a par value of one dollar and 400 shares of six percent cumulative preferred stock at a par value of $50.

7. On January 27, 1960, there were outstanding 4,562 shares of common stock of the corporation of which Harold W. Burtch owned 1,727 shares, Margaret W. Burtch owned 142 shares, Dean C. Burtch owned 606 shares and David L. Smith owned 1,760 shares.

8. On January 27, 1960, there were outstanding 385 shares of preferred stock of the corporation and of that Harold W. Burtch and Margaret W. Burtch owned 91 shares.

9. On January 27, 1960, Harold W. Burtch, Margaret W. Burtch, and Dean C. Burtch entered into a voting trust agreement for a period of ten years with regard to their aforementioned shares of common stock. Dean C. Burtch was the trustee.

10. On November 11, 1963, Harold W. Burtch died after a long illness, bequeathing all of his right,

title and interest in the stock and voting trust certificates of the corporation to his wife, Margaret W. Burtch.

11. Prior to Harold W. Burtch's death, a family dispute arose over whether Irene B. Taylor and Julia B. Rohloff should be placed on the corporation's payroll and whether additional income should be provided to Margaret W. Burtch.

12. To resolve this dispute the formation of a subchapter S. corporation was contemplated and it was decided that the shares of stock owned by David L. Smith should be purchased.

13. In August, 1963, Margaret W. Burtch purchased in her name, not the corporation's, the 1,760 shares of common stock owned by David L. Smith.

14. Thereafter in 1963, the corporation brought suit in the Chancery Court of New Jersey to require Mrs. Margaret W. Burtch to treat the stock that she had bought in her name from David L. Smith as being purchased on behalf of the corporation and to compel her to assign this stock to the corporation.

15. In this New Jersey action, attorney Henry S. Ross, Esq., represented the corporation and Mrs. Margaret W. Burtch was defended by her attorney, Martin L. Haines, Esq.

16. On October 7, 1964, a stipulation of settlement was entered into in the chancery court whereby the parties sought to resolve their differences and effect a method of providing income for Mrs. Margaret W. Burtch, and for her two daughters, Julia B. Rohloff and Irene B. Taylor, while at the same time providing for the continued control of the corporation by Dean C. Burtch and ultimately his ownership of the corporation.

17. In order to prepare the necessary documents to implement this tentative settlement, Henry S.

Ross, Esq., consulted with a Philadelphia attorney and tax expert, Peter Demetri, Esq. Martin L. Haines, Esq., consulted with another attorney, Martin Huffaker, Esq.

18. The stipulation of settlement posed serious tax problems, particularly for Mrs. Margaret W. Burtch and for her daughters, Irene B. Taylor and Julia B. Rohloff.

19. Extensive negotiations were conducted on how to achieve the desired settlement but avoid the serious tax problems. Finally, it was agreed that the implementation of the settlement was to occur in a series of transactions.

20. As part of the settlement and to solve many of the tax problems, Irene B. Taylor and Julia B. Rohloff each received as a gift from Mrs. Margaret W. Burtch 863½ shares of common stock subject to the 1960 voting trust and 45½ shares of preferred stock in the corporation.

21. Pursuant to this transfer, the corporation issued to both Irene B. Taylor and Julia B. Rohloff a certificate in the 1960 voting trust for 863½ shares of common stock on January 3, 1965.

22. (A) During these aforementioned negotiations Julia B. Rohloff and Irene B. Taylor were represented by Martin L. Haines, Esq.

(B) Martin L. Haines, Esq., in a letter dated May 3, 1965, to Peter Demetri, Esq., stipulated that Julia B. Rohloff and Irene B. Taylor be made parties to the New Jersey proceeding.

(C) In the same aforementioned letter, Martin L. Haines, Esq., declared that the 1960 voting trust shall be terminated.

23. As part of the settlement, the corporation purchased in October, 1965, the 1,760 shares of its common stock previously owned by David L. Smith and the subject of the New Jersey action.

24. As part of the settlement, three documents were executed on October 28, 1965. They are as follows:

(A) An employment agreement between the corporation and Mrs. Margaret W. Burtch to pay her $24,000 a year for the rest of her life. This agreement was designed and intended to provide Mrs. Burtch with a source of income.

(B) A stock option agreement whereby Irene B. Taylor and Julia B. Rohloff granted the corporation an option to purchase their stock in exchange for a promise to pay them each $10,000 a year for life commencing upon the death of Mrs. Burtch. In the event that either Irene B. Taylor or Julia B. Rohloff died before their children reached 21 then the payments would go to the children until they attained the age of 21. This agreement was designed and intended to provide Irene B. Taylor and Julia B. Rohloff or their children with a source of future income, while at the same time ensuring Dean C. Burtch eventual majority ownership of the corporation.

(C) A new and independent voting trust agreement was executed with Dean C. Burtch, Irene B. Taylor and Julia B. Rohloff as settlors and Dean C. Burtch as trustee. This agreement was designed and intended to create a new and independent voting trust to replace the outdated 1960 voting trust.

25. On October 29, 1965, The Honorable John Wicks of the Chancery Court of New Jersey issued a final judgment in the New Jersey action which stated:

"1. That J. W. Pepper & Son, Inc. is entitled to acquire the stock of David M. Smith and Jean L. Smith provided, however, that it shall assume all obligations otherwise assumed by Winifred Burtch

under the agreement of sale for said stock executed by her with the said Smiths, and shall reimburse the said Winifred Burtch for all monies paid by her to the said Smiths, and for any interest paid by her on any monies borrowed by her in connection with the purchase of the said stock.

"2. That the causes of action of the parties as to all the other claims asserted therein are dismissed with prejudice and without costs, except that any and all existing written agreements of the parties, including any and all agreements to which they are parties with others, shall remain in full force, unaffected by this judgment."

26. The "existing agreements" referred to in the chancery court's final judgment are the three aforementioned documents executed on October 28, 1965.

27. Immediately prior to June 26, 1974, there were outstanding 2,802 shares of common stock in the corporation.

28. Prior to June 26, 1974, Irene B. Taylor and Julia B. Rohloff received notice of the corporation's intention to exercise the option to purchase their stock in the corporation.

29. On June 26, 1974, a meeting of the stockholders of the corporation was held at which time the option to purchase the shares of Irene B. Taylor and Julia B. Rohloff as provided in the October 28, 1965, stock option agreement was voted exercised.

30. At the stockholders meeting, Dean C. Burtch, as trustee, voted the 1,727 shares of common stock that were subject to the voting trust agreement of October 28, 1965.

31. On July 11, 1974, the corporation issued stock certificates in its own name for 1,727 shares of common stock and 91 shares of preferred stock

purporting to be the stock obtained from Irene B. Taylor and Julia B. Rohloff.

32. Plaintiffs, Irene B. Taylor and Julia B. Rohloff, instituted this equity action on July 30, 1974.

33. At the time of trial, all of the defendants were represented by single counsel, Stephen Mathes, Esq.

## CONCLUSIONS OF LAW

1. Where the issue is the validity of a contract, the Parol Evidence Rule does not bar the admission of extrinsic evidence which establishes the validity or invalidity of that contract.

2. A time extension of a preexisting voting trust in violation of 15 P.S. §1511(D) is invalid.

3. An agreement is not invalid under 15 P.S. §1511(D) if it creates a new and independent voting trust.

4. The 1965 voting trust agreement created a new and independent voting trust.

## DISCUSSION OF LAW

Plaintiffs assert that the 1965 voting trust agreement speaks for itself as an integrated and complete document. Plaintiffs raised an objection based on the Parol Evidence Rule to the introduction of extrinsic evidence concerning the legality of the 1965 voting trust. This court allowed the testimony and granted the plaintiffs a continuing objection.

It is inherently inconsistent for plaintiffs to allege the invalidity of the 1965 voting trust and then seek to use the integration clause of that very agreement to prevent the admission of extrinsic evidence

which proves the agreement's validity: "The parol evidence rule presupposes an action based on an existing valid contract, and if the issue is as to the validity or legality of the contract, the rule, by its very terms, has no application, and extrinsic evidence is admitted to determine that issue, whether such evidence tends to establish the validity or invalidity of the contract in question." 30 Am. Jur. 2d, Evidence, §1035, 171. See Kuhn v. Buhl, 251 Pa. 348, 96 Atl. 977 (1916).

While plaintiffs do not challenge the validity of the 1965 agreement granting the corporation the option to purchase plaintiffs' trust stock, they do seek to have the June 26, 1974, exercise of the option set aside. Plaintiffs contend that the trustee was unauthorized to vote their shares because the 1965 voting trust was an illegal extension of an earlier trust and therefore the vote was null and void. Under such a theory plaintiffs attempt to indirectly achieve a result which could not be achieved directly, that is, the prevention of the option's exercise. This presupposes that plaintiffs, as optionors, could vote against the exercise of the very option which they granted to the corporation in exchange for valuable consideration. However, it is not necessary that this difficult question be addressed in this opinion.

In Pennsylvania the creation of voting trusts is authorized by statute. The Act of May 5, 1933, P.L. 364, art. V, sec. 511, as amended, 15 P.S. §1511(A), provides:

"A. Two or more shareholders of any business corporation may, by agreement in writing, transfer their shares to any corporation or person for the purpose of vesting in the transferee or transferees all voting or other rights pertaining to such shares

for a period not exceeding ten years, and upon the terms and conditions stated in the agreement."

A time extension of the original voting trust is provided for under section 1511(D) which states in pertinent part:

"D. At any time within one year prior to the time of expiration of any such voting trust agreement as originally fixed or as extended as herein provided, one or more beneficiaries of the trust under such voting trust agreement may, by agreement in writing and with the written consent of such voting trustees, extend the duration of such voting trust agreement for an additional period not exceeding ten years."

Plaintiffs contend that the 1965 voting trust was a mere continuation of the 1960 voting trust and therefore constituted an illegal extension under section 1511(D). This involves a question of first impression for there is no case law in Pennsylvania regarding the application of section 1511(D).

However, in a Delaware case involving similar statutory language, a time extension of an earlier voting trust was held to be invalid and the subsequent director's election was set aside: Belle Isle Cays v. Corcoran, 29 Del. Ch. 554, 49 A. 2d 1 (1946). There, the contention that the disputed instrument constituted a new agreement was expressly rejected by the Delaware Supreme Court based upon its textual reading of the instrument and the lack of additions or alterations within the instrument. This court adopts the Belle Isle approach.

Therefore, the controlling issue before this court becomes what did the 1965 voting trust agreement constitute: a mere continuation of the 1960 voting

trust or the creation of a new voting trust? After a careful review of the evidence and the law involved, this court holds that the 1965 voting trust was a new and independent agreement by reason of the termination of the 1960 voting trust. The basis of this court's conclusion is fourfold.

First, there are no statutory restrictions which prevented the parties from terminating the 1960 voting trust before its expiration date and then reaching an entirely new agreement. Section 1511(D) is applicable only to a time extension of a preexisting voting trust and therefore does not operate to invalidate an agreement creating a new and independent voting trust.

Secondly, the general law of trusts applies to voting trusts except as they are modified by the terms of the trust agreement. See Bogart, §252, 296, 2d ed. 1977. In the case at bar, the 1960 voting trust agreement expressly provided for its termination.

"In the event of the death of the Trustee prior to the termination of this Agreement or upon his resignation or *refusal* or inability to act, the parties of the first part shall have the power to substitute a new Trustee in his place and stead by a majority vote thereof, or *at the option of said parties*, of the first part, to then and there *terminate the trust* hereby created." (Emphasis supplied.) (Exhibit P-2, §9) The parties of the first part were the settlors, Dean C. Burtch and Mrs. Margaret W. Burtch, and plaintiffs by virtue of Mrs. Burtch's gift.

Thirdly, the evidence before this court overwhelmingly reveals that it was the clear intention of the parties that the 1965 voting trust constitute a new and independent agreement. As trustee, Dean C. Burtch's committal to act under the new and different terms of the 1965 voting trust was in fact a

refusal to act under the 1960 voting trust. The execution and ratification of the three documents of October 28, 1965, by Dean C. Burtch, Mrs. Margaret W. Burtch and the plaintiffs, served as an implicit election to terminate the 1960 voting trust.[4]

Further, the evidence establishes the context and purpose for which the 1965 voting trust was created. The 1965 voting trust, the stock option and employment agreements were all part of an attempt to resolve a family dispute over control of the corporation and to settle a New Jersey lawsuit arising therefrom. Such an underlying purpose did not have as its objective the mere continuation of the outdated 1960 voting trust nor the contravention of the public policy behind section 1511(D).

Finally, the 1965 voting trust on its face is substantially different from its 1960 counterpart, and cannot be construed as a continuation of that earlier trust.[5] The voting power of the 1965 trust increased with the corporation's purchase of the contested stock owned previously by David L. Smith. A careful comparison between the terms of the two voting trusts set forth numerous and substantial differences in the 1965 voting trust which can be summarized as follows:

---

4. The evidence also establishes an express election by the parties to terminate the 1960 voting trust. (See findings of fact 22 and Exh. D-10).

5. Plaintiffs rely on the first page reference to the 1960 voting trust and the words "to revise, amend and modify" contained in the 1965 voting trust agreement. However, this court cannot base its entire decision on the textual reading of the first page of an agreement alone, but rather it must read the document in its entirety. Just as the Belle Isle Court looked beyond the text of the disputed instrument for additions and alterations, so must this court.

1. There is no provision which allows any of the corporation's shareholders to join the 1965 voting trust as there was in the 1960 voting trust.

2. The stock option and employment agreements of October 28, 1965, are incorporated by reference.

3. These two agreements are safeguarded by limits on trustee's voting powers. However, the trustee can vote to exercise the stock option.

4. Preferred and common stock were subject to the 1965 voting trust.

5. In the event of a dividend the trustee can retain stock and other non-cash dividends.

6. The duties and role of the trustee are expanded. Trustee is also protected from liability and is permitted financial dealings with the corporation or subsidiaries. Trustee is compensated for services performed in other capacities and is authorized to employ all necessary agents.

7. Automatic termination is provided for.

8. A time extension of the 1965 voting trust is provided.

9. The dissolution, total or partial liquidation and merger of the corporation is provided for.

10. In the event of the invalidity of any provisions the remaining provisions of the agreement are severable to the extent that they can be applied.

On the basis of this comparison of the two voting trusts, it is evident that the 1965 voting trust was not a continuation of the 1960 voting trust.[6]

---

6. An alternative theory open to this court would have been to hold that the 1965 voting trust agreement created a new and independent voting trust by reason of substantial modification. See Restatement, 2d, Trusts, §338. However, the evidence before this court establishes that the parties intended to terminate the 1960 voting trust rather than modify it.

In light of this court's holding, it is not necessary to discuss the equitable defenses of clean hands and laches raised by the defendants. Also, this court's holding is dispositive of the second count of defendant's counterclaim.

### DECREE NISI

And now, April 20, 1979, it is ordered, adjudged and decreed:

1. The allegations of plaintiffs are without merit and the relief requested by plaintiffs is hereby denied.

2. The counterclaims of defendants are likewise denied.

Unless exceptions to this adjudication and/or decree nisi are filed within 20 days this shall become the final decree of the court.