Rockingham, }
Jan. 2, 1917. }

### WILLIAM T. ROSS & a. v. JOSEPH B. BROWN & a.

The power vested in selectmen, by the adoption by a town of P. S., c. 79, s. 10, to "construct sidewalks therein," was not transferred to highway agents by Laws 1893, c. 29, s. 3.

PETITION, for injunction, heard and denied subject to exception, upon the following agreed statement of facts. The plaintiffs are the highway agents and the defendants the selectmen of the town of Hampton. At the annual meeting in March, 1916, the town appropriated $500 to build a sidewalk, which the defendants are now building without employing the highway agents in the work. The plaintiffs claim the selectmen are not authorized to construct the sidewalk except through the highway agents and ask that the selectmen be restrained from further construction and expenditure of the appropriation. The town has adopted the provisions of c. 79 of the Public Statutes. Transferred from the May term, 1916, of the superior court by *Branch*, J.

*Page, Bartlett & Mitchell*, for the plaintiffs.

*Eastman, Scammon & Gardner*, for the defendants.

PARSONS, C. J. Chapter 79 of the Public Statutes, "Sidewalks and Sewers," is in force in Hampton because of its adoption by the

town. By force of such adoption by the terms of this chapter the selectmen of Hampton possess the powers as to sidewalks and sewers conferred by the chapter upon the mayor and aldermen of any city. *Ib.*, *s.* 10.

The first section of the chapter provides that "the mayor and aldermen of any city, upon petition, may construct sidewalks therein." The agreed facts do not show a petition for this sidewalk. But the plaintiffs do not rest their objection to the jurisdiction of the selectmen upon the lack of a formal petition, a defect which, if it exists, it is obvious could be easily cured. They contend that the power given selectmen by this chapter was withdrawn by a statute of later date than the Public Statutes, which were adopted in 1891, viz. Laws 1893, *c.* 29, *s.* 3.

The section relied upon requires the election of highway agents and prescribes their duties; *i. e.*, that they "shall have charge of the construction and repair of all highways and bridges within the town." This section was amended four years later by the insertion of the limiting clause, "under the direction of the selectmen." In the insertion of another amendment in 1913 (Laws 1913, *c.* 14), this limiting clause was by accident, or design, omitted from the section, to be restored by the next legislature. Laws 1915, *c.* 171. These amendments, however, do not affect the question which is whether a reasonable construction of the language used in 1893 substitutes the highway agents for the selectmen as the board having the powers of the mayor and board of aldermen of any city over the construction of sidewalks in towns which adopt the statute. The argument is that, since sidewalks have been considered highways within the town's duty of highway repair (*Lambert* v. *Pembroke*, 66 N. H. 280), the power of constructing highways necessarily includes that of building sidewalks. And it must be conceded the construction contended for by the plaintiffs is within the letter of the language used in 1893. But while the question is not free from doubt it seems more probable that such meaning was not intended to be given in 1893 to the language then used.

Chapter 73 of the Public Statutes is entitled "Repairing highways in towns," and provides for the payment of taxes for that purpose in labor if the town does not order their payment in money, and prescribes the procedure for such enforcement of the tax through officers called surveyors of highways.

Chapter 29, Laws 1893, is entitled, "An act providing for the construction, improvement, and repair of highways and bridges

in towns, and in amendment of Chapter 73 of the Public Statutes."
This act abolishes all existing highway districts, requires the raising
of the highway tax in money and substitutes one or more, not
exceeding three, highway agents as executive officers in highway
work throughout the whole town in place of highway surveyors,
each acting in one of several districts into which towns might be
divided under the existing law. Under that law money raised by
the town for highway repair could be expended by the selectmen,
surveyors of highways or committees appointed by the town. P. S.,
c. 73, ss. 5, 6. The new statute was an abandonment of the high-
way labor tax, destroyed the office of surveyor of highways, made
a money tax compulsory and placed the expenditure of the same
with highway agents to be elected by the town. Special reference
is made in the repealing section to the provisions of c. 73. Side-
walks are not mentioned and there is no direct reference to chapter
79. It is clear that the subject then before the legislature was the
change from one method of road repair to the other.

The earliest legislation upon the subject of sidewalks that has
been discovered is chapter 25 of the Laws of 1872, which authorized
the city councils of any city by ordinance and any town by by-law
to provide for the construction and maintenance of sidewalks and
the assessment of a just proportion of the expense upon abutting
owners. In 1875 by c. 36 the subject was more elaborately treated
and the matter cast in substantially the shape in which it now
appears, i. e., the power is first conferred upon the mayor and
aldermen of any city and by the concluding section like power is
given selectmen of towns which adopt the act; with the power to
construct is joined the power to widen and straighten the highway
and to assess a portion of the expense upon abutters. In the
revision of 1878, the General Laws, provisions as to sidewalks and
sewers are combined into a chapter entitled, "Sidewalks and Sewers."
Gen. Laws, c. 78. In the Public Statutes the provisions for the
assessment of abutters were striken out to be restored by c. 72,
Laws of 1895. Section 10 of c. 79, P. S., is: "The provisions of
this chapter shall be in force in such towns and village districts as
may adopt the same; and the selectmen shall perform all the duties
and possess all the powers in the town or the district, as the case may
be, conferred by this chapter upon the mayor and aldermen."
Section 1 is, "The mayor and aldermen of any city, upon petition,
may construct sidewalks therein . . . and for that purpose
may widen and straighten any highway as in other cases." From

this language it must have been understood that the power to construct was lodged with the body having the power to widen and straighten highways. Such power selectmen have, and in imposing upon them the power given city officers having the corresponding duty the statute is harmonious with other legislation and uniform in cities and towns. To authorize highway agents to widen and straighten highways for sidewalk purposes in towns would be to set up in towns two bodies having jurisdiction over highway location with a possibility of conflict which could not reasonably be inferred as within the legislative purpose, while it is, as suggested, clear by the original statute the legislature intended the power of location and construction should be vested in the same board. The selectmen may of course build through the highway agents, but upon all the evidence of the legislative intention it is not clear it was intended to require them to do so. The petition therefore was properly denied.

It is not probable the legislature understood that in providing for the assessment of the expense of construction upon abutting owners they were imposing such duty upon highway agents instead of upon selectmen, Laws 1895, *c.* 72, *s.* 1, but the understanding in 1893 rather than 1895 is now in question.

Chapter 111, *s.* 1, Laws 1895, giving highway agents charge and supervision of highways and sidewalks, has not been overlooked, but this does not relate to new construction, and, for the reason last stated, bears but slightly upon the question of legislative intent in 1893.

*Exception overruled.*

All concurred.