**Willie Hugh DAILEY, Appellant,**

v.

**UNITED STATES of America,**
**Appellee.**

**No. 16849.**

United States Court of Appeals
Fifth Circuit.

Dec. 23, 1958.

Rehearing Denied Feb. 11, 1959.

Walter B. Fincher, of Fincher & Pruitt, Atlanta, Ga., for appellant.

James W. Dorsey, U. S. Atty., John W. Stokes, Jr., Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before RIVES, BROWN and WISDOM, Circuit Judges.

WISDOM, Circuit Judge.

Willie Hugh Dailey was indicted, tried, and convicted on two counts of violating the narcotic laws. 26 U.S.C.A. §§ 4722, 5705(a). He was sentenced to five years on each count, the sentences to run concurrently. We affirm the judgment.

Dailey was a pharmacist for a drugstore in Atlanta, Georgia. April 16, 1957, without a prescription, Dailey sold twenty tablets of one-grain morphine sulphate to a merchant seaman for $100. The profit is big in an illegal sale of narcotics; the legitimate retail price for twenty morphine tablets is less than a dollar. Dailey passed the tablets to the seaman in a toothpaste box. April 25, 1957, the merchant seaman made a second purchase of twenty tablets. These too were hidden in a toothpaste box.

The merchant seaman turned out to be George Gaffney, District Supervisor for the United States Bureau of Narcotics for the Southeastern States. Arrangements for his purchases were made by telephone calls—monitored—from a narcotics informer to Dailey.

Gaffney worked on the case with federal narcotic agents R. H. Thomas and E. R. Barber. They were not present in the store when he bought the morphine. They were close by. In each instance after Gaffney left the store they went with him to the Narcotic Bureau office. There he turned over the morphine tablets to them to be chemically analyzed.

May 9, 1957, two weeks after the last purchase, Barber, Thomas, and Gaffney drove out to Dailey's home in Hapeville, a suburb of Atlanta. Gaffney was still disguised as a merchant seaman. Barber and Thomas arrested Dailey, telling him to get in their automobile. They had no warrant for his arrest. They drove to the Narcotic Bureau office, a distance of about ten miles from Dailey's home. On arriving at the office he was afforded immediately the opportunity of calling an attorney and a bondsman. The record does not show how long Dailey and the agents remained at the Narcotic Bureau. After a stay there, he was taken to the office of the United States Commissioner.

During the ride from Hapeville and shortly after Dailey entered the automobile, Barber asked Dailey if he had ever seen Gaffney before. Dailey replied that he had not. Barber said that Gaffney had admitted purchasing morphine illegally from Dailey. Again Dailey denied ever having seen Gaffney. Thomas asked if Dailey would care to take a lie detector test. At that point Dailey admitted the sales to Gaffney. His confession was not reduced to writing. At the trial, over objections, the Court admitted testimony as to Dailey's confession.

I.

The defendant contends that his confession was inadmissible, because it was obtained while he was under illegal arrest; illegal, because he was arrested without a warrant. He argues that failure of the government agents to obtain a warrant when they had fourteen days within which to act after the last sale to Gaffney shows that the agents did not think that they had probable cause, and the record shows no circumstances to justify arrest without a warrant.

The Fourth Amendment protects citizens from unreasonable searches and seizures and from the issuance of warrants without probable cause.[1] It does

---

1. "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." 4th Amendment, United States Constitution. Generally, then, an arrest should be accompanied by a warrant. See Gatewood v. United States, 1953, 93 U.S.App.D.C. 226, 209 F.2d 789.

not prohibit an arrest without a warrant, when there is reasonable or probable cause for the arrest. Mills v. United States, 1952, 90 U.S.App.D.C. 365, 196 F.2d 600, certiorari denied 344 U.S. 826, 73 S.Ct. 27, 97 L.Ed. 643.

Congress specifically authorizes arrests without warrants—for narcotic violations. The Narcotic Control Act of 1956 provides, 26 U.S.C.A. § 7607:

> "The Commissioner, Deputy Commissioner, Assistant to the Commissioner, and agents, of the Bureau of Narcotics of the Department of the Treasury, * * * may * *
>
> "(2) make arrests without warrant for violations of any law of the United States relating to narcotic drugs (as defined in section 4731) or marihuana (as defined in section 4761) where the violation is committed in the presence of the person making the arrest or where such person has reasonable grounds to believe that the person to be arrested has committed or is committing such violation."

■ The safeguard is the requirement that the arresting officer have "reasonable grounds to believe that the person to be arrested has committed or is committing" a violation of the narcotic laws. The language of the Act is clear. There is no occasion therefore to complicate the problem; no need to speculate as to limitations that may or may not be implicit in the Act as we might ferret out the legislative history. The act is an obvious attempt to give law enforcement officers more latitude than they have had in making arrests without warrants. There is nothing in the statute requiring that an arrest be made immediately following the arresting officer's knowledge of probable cause for arrest. If an arresting officer has reasonable grounds to believe that a person has violated the narcotic laws, he may defer the arrest for a day, a week, two weeks, or perhaps longer. The narcotic traffic is dirty business. Detection of traffickers and collection of evidence is exceedingly difficult. It is within the province of Congress to avoid the necessity for a warrant, if to begin with there is reasonable ground for an arresting officer to believe that the person to be arrested has violated the narcotic laws. In this case the record shows that the agents had abundant grounds for such belief.

■ Dailey labors to bring this case within the reach of the McNabb,[2] Upshaw,[3] Fikes,[4] and Mallory [5] cases. They have no application. Here the arrest and detention were legal. Even if the arrest and detention were illegal, we take the position that the confession was admissible, since there is no evidence that the confession was induced by the detention. There is of course loose dicta, discoverable in some cases, that illegal detention, standing alone, is sufficient to destroy the effect of a disclosure or admission made during the detention. An examination of the cases, however, shows that in every instance there was something more than detention standing alone. There was physical or mental coercion, or a simple-minded illiterate who was taken advantage of by police officers, or there was a long, steady, gruelling interrogation [6] of the accused.

2. McNabb v. United States, 1943, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819.

3. Upshaw v. United States, 1948, 335 U.S. 410, 69 S.Ct. 170, 93 L.Ed. 100.

4. Fikes v. State of Alabama, 1956, 352 U.S. 191, 77 S.Ct. 281, 1 L.Ed.2d 246.

5. Mallory v. United States, 1957, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479.

6. For instance, in the McNabb case, the men "were arrested in the middle of the night at their home * * * [T]hey were put in a barren cell and kept there for fourteen hours". Upshaw had been gruelled for 30 hours after an arrest without a warrant. Fikes was an uneducated Negro. Again, in Mallory, there was relentless questioning until a confession was obtained, "the third degree" was used. Mallory was "a nineteen-year-old lad of limited intelligence". [354 U.S. 449, 77 S.Ct. 1360].

Here, Dailey was not a poor, ignorant, simple soul. He was not frightened by the police. He confessed quickly and voluntarily. He argues that detention was illegal, since he was not brought immediately to the United States Commissioner. But he admitted his narcotic sales before he could be brought anywhere. In this respect the case falls within the scope of Mitchell v. United States, 1944, 322 U.S. 65, 64 S.Ct. 896, 88 L.Ed. 1140.[7]

As we read the record, there was no necessary relation between the arrest and the confession.[8] When Dailey was confronted with Gaffney, the federal agent to whom he had sold morphine illegally, he knew all too well that he had reached the end of the road. He was caught. He gave up. He confessed. We think that the testimony as to his confession was admissible.

## II.

Dailey attempted to prove good character through Virlyn Smith, a resident of Fairburn, Georgia. Dailey formerly lived in Fairburn. His parents still lived there, and he visited them nearly every Sunday. The trial judge examined Smith in a voir dire hearing. Smith was asked if he knew the appellant's general character and reputation. He answered that he could speak for himself, "not for the community"; "I don't know that I could speak for the people in my community"; "I don't think I would be qualified to give the opinion of the people in my town". The trial judge then excused Smith as a witness.

Smith's testimony is open to several interpretations. If it means that Smith had never heard the people of his community speak ill of Dailey, it was admissible. But the trial judge concluded that Smith was unwilling to testify as to

Dailey's reputation in Fairburn. In the circumstances we cannot say that the trial judge abused his discretion. French v. United States, 5 Cir., 1956, 232 F.2d 736, certiorari denied 352 U.S. 851, 77 S.Ct. 73, 1 L.Ed.2d 62.

Judgment is

Affirmed.

---

7. In the Mitchell case, the defendant promptly and spontaneously admitted his guilt within a few minutes after his arrival at the police station. Dailey's confession was, as in the Mitchell case, "the offspring of reasoned choice". Also, Dailey, just as in the Mitchell case, confessed before the illegal detention began.

8. In Mitchell, [322 U.S. 65, 64 S.Ct. 898] the court said "there was no disclosure induced by illegal detention". We find the same thing to be true of Dailey's confession.