THE STATE OF DELAWARE *v.* NICA deKOENIGSWARTER, also known as Kathleen de Koenigswarter.

(*January* 19, 1962.)

CHRISTIE, J., sitting.

*Clement C. Wood*, Chief Deputy Attorney-General, for the State.

*John J. Morris, Jr.*, and *Arthur J. Sullivan* (of Morris, James, Hitchens and Williams), and *Thomas A. Wadden, Jr.*, and *Robert L. Weinberg* (of Williams and Stein, of Washington, D. C.), for the defendant.

Superior Court for New Castle County, No. 442, Cr. A., 1960.

CHRISTIE, J.:

On October 15, 1958, the defendant was arrested and charged with the unauthorized possession of a narcotic drug in violation of 16 *Del. C.* § 4702(a). She was tried without a jury in the Court of Common Pleas and found guilty. She has appealed to the Superior Court where she is entitled to a trial *de novo*. A pretrial motion to suppress the evidence here discussed was considered on affidavits and denied by this Court.

In the course of the trial before a jury the State sought to introduce a substance alleged to be marijuana which had been seized from defendant's luggage. Defendant objected on the ground that such evidence was obtained as a result of an illegal search contrary to her right against unreasonable searches under the Constitutions of Delaware and of the United States.

The Court heard extensive testimony outside of the presence of the jury. Only some of the significant facts are here mentioned.

The undisputed evidence shows that on October 15, 1958 defendant had stopped her car in front of a motel on U. S. Route 13 south of Wilmington in order that Thelonious Monk, one of her passengers, could get a drink of water. At this point a State trooper appeared and questioned Monk. Monk did not reply to the trooper's questions, and defendant explained that Monk was sick.

With the apparent approval of the trooper, defendant started to drive on toward Baltimore. The trooper followed and stopped defendant, demanding that Monk get out of the car. Monk refused to get out and asked "why the hell" he should do so, or used words to that effect. The trooper was angry by then and informed Monk he was under arrest. It was not clear whether the arrest was based on the use of profanity or for a minor incident which had taken place while Monk was seeking water at the motel for which an arrest warrant was later issued. In any case Monk continued to refuse to get out of the car.

Several other police officers were called by the arresting officer. They appeared in patrol cars with handcuffs and weapons. Monk was removed from the car by force and thrown to the ground. While this was going on defendant got out of the car and begged the police not to strike Monk because he was sick. The police told her not to interfere and proceeded to use blackjacks on Monk. Finally his hands were handcuffed behind his back.

Monk was then placed on the floor of a police car. When he prevented the closing of the car door by refusing to draw in his legs a blackjack was again used on him.

Defendant's keys, driver's license and auto registration had been taken from her by the police. After Monk was removed her keys were returned to her and she was told to follow the police car to a Magistrate's office. She did so without protest.

There she saw Monk searched. Later Monk pleaded guilty to a disorderly conduct charge arising out of a minor incident which had taken place at the motel before the police arrived. He was fined $10 and costs.

There were several police officers at the Magistrate's office. After a time two police detectives arrived. Defendant

heard one of them mention a search warrant to the Magistrate.

More than two hours after defendant's registration card and driver's license were taken from her the police asked defendant for permission to search her pocketbook and car. She gave such permission and cooperated with the police in their search. She now states that she did so because she felt she had no choice.

Defendant does not contend that she was threatened or otherwise mistreated. There is a dispute in the testimony as to what access defendant was given to a telephone, but it is admitted she was not told of her constitutional rights and that she had no advice from an attorney.

The search included the contents of a suitcase in the trunk of the car where detectives found the evidence which the State seeks to use.

■ It has long been established as a matter of Delaware law that evidence obtained illegally from the accused by the State may not be used against such person in a criminal proceeding. *Rickards v. State*, 6 *Terry* 573, 77 *A.* 2d 199 (1950).

The United States Supreme Court has recently ruled that the United States Constitution imposes a similar rule on all the states. *Mapp v. Ohio*, 367 *U. S.* 643, 81 *S. Ct.* 1684, 6 *L. Ed.* 2d 1081 (1961). The far reaching implications of the *Mapp* decision have been the subject of much comment. See for example *People v. Loria*, 10 *N. Y.* 368, 223 *N. Y. S.* 2d 462, 179 *N. E.* 2d 478 (1961); 75 *Harvard Law Review* 152 and 30 *Geo. Washington Law Review* 127.

■ In general a valid search may be made under one of three circumstances:

1. Pursuant to a legally issued search warrant.

2. As an incident to a legal arrest.

3. With the affirmative consent of those owning or in possession of the property to be searched.

There was no search warrant issued in this case.

█ The search was not made pursuant to a legal arrest. The State maintains defendant was not arrested until about two hours after the search. Defendant states that she considered herself under arrest from the time they took her registration and driver's license away more than two hours before the search. I conclude that defendant must have been arrested or officially detained when her registration and driver's license were taken away from her and held by the police since she could not legally proceed on her journey without having at least one of these papers in her immediate possession. 21 *Del. C.* § 2705(a). If this action constituted an arrest, it was an illegal one since no felony charge was involved, she had committed no offense in the presence of the police and there was no warrant for her arrest.

█ It is not claimed by the State that defendant was merely detained under a State statute which permits detention of persons for questioning for two hours, but if such claim were successfully asserted the subsequent arrest would probably be illegal.*

Since there was no search warrant and since the search was not made pursuant to a legal arrest, the search was un-

---

*Under the statute referred to a person detained for questioning must be arrested or released at the end of two hours. 11 *Del. C.* § 1902(c). This statute is strictly enforced by Delaware Courts. Here defendant had been in custody slightly more than two hours before the evidence against her was seized and she was held for two more hours before going through the formalities usually associated with an arrest. It is the State's position that defendant was detained under this statute only after the search and that before the search she was free to depart at any time. The evidence does not support the contention that she was free to leave before the search was made. But if the State had evoked the detention statute before the search, there would be no justification for holding defendant after the first two hours without an arrest.

constitutional unless defendant consented thereto under such circumstances as to indicate a voluntary waiver of a valuable legal right without coercion or duress.

Is there any evidence to support a finding that defendant's consent was without coercion and duress? I have held that the consent was given after two hours of illegal arrest. Under such circumstances a voluntary confession or consent to a search is still possible. *United States v. Busby*, 126 *F. Supp.* 845 (D. C., D. C. 1954). However, the State has a very heavy burden in proving an absence of duress or coercion. *Cf. Judd v. United States*, 89 *U. S. App. D. C.* 64, 190 *F.* 2d 649 (1951).

The State contends that issue of whether the consent was voluntary was decided once and for all by my pretrial ruling. It is the practice under Federal Criminal Rule 41(e), 18 *U. S. C. A.*, which corresponds to Superior Court Criminal Rule 41(e) to make final rulings on motions to suppress evidence before the trial. See *United States v. Wheeler*, 172 *F. Supp.* 278 (W. D. Pa. 1959). But in this case live testimony was not heard at the pretrial stage and defendant was permitted to reopen the issue at trial.

The State also contends that if the issue is reopened at trial, it should be submitted to the jury citing the old civil case of *Fennemore v. Armstrong*, 6 *Boyce* 35, 96 *A.* 204 (Superior Ct. 1915) and *United States v. Wheeler, supra.*

Modern procedure as to suppression of evidence in criminal cases is governed by Superior Court Criminal Rule 41(e) if the issue is raised before trial. Where the Court permits the issue to be raised or re-raised at trial the procedure followed is similar to that used in connection with challenged confessions as outlined in *Wilson v. State*, 10 *Terry* 37, 48, 109 *A.* 2d 381 (Supreme Ct. 1954). Such matter is presented to the jury only after a hearing on *voir dire* results in a determination that there is an issue for the jury.

██ There is now sufficient undisputed evidence before the Court to make it clear that defendant's motion must be granted even if the evidence is viewed in the light most favorable to the State. There is no issue of material fact for the jury.

During a two hour period of illegal arrest before permission for the search was given, defendant had seen her companion twice beaten in the presence of several police officers for passively resisting arrest in connection with a minor charge. He had also been searched in her presence. It is inevitable that an atmosphere of duress prevailed.

I find the circumstances to be such as to make an affirmative showing of absence of coercion and duress impossible. Thus there was no effective permission to search the car and no waiver of the defendant's constitutional rights as to searches and seizures. The search violated the provisions of the State Constitution and the evidence seized as a result thereof may not be used against defendant.

Defendant's objection to the use of the evidence seized is sustained.