STATE OF DELAWARE v. GRACE HOLLAND

(*March* 7, 1963.)

LYNCH, J., sitting.

*Oliver V. Suddard* for Defendant.

*Charles L. Paruszewski,* Deputy Attorney-General, for the State.

Superior Court for New Castle County, No. 111, Cr. A., 1962.

LYNCH, J.:

The defendant was arrested in the City of Wilmington on November 22, 1961, charged with selling alcoholic liquors without a license. The record before me shows that police officers entered her premises and one such policeman made a purchase from defendant of six 12 ounce cans of beer. After going forward with his inspection of defendant's premises and probably completing it, this same policeman returned in a short time to the room where the sale took place and arrested defendant.

The charge is a misdemeanor and no question exists at this time but that the defendant made the sale.

She complains she was not arrested immediately and without a complaint being filed and arrest made thereafter on issuance of a warrant.

The Information lodged in the Municipal Court charged:

"* * * that Grace Holland late of Wilmington Hundred, in the County aforesaid, on the 22nd day of November, in the year of our Lord, one thousand nine hundred and sixty-one, with force of arms, at said City of Wilmington, in the County aforesaid, and within the jurisdiction of the Municipal Court did unlawfully commit a misdemeanor, to wit: did sell intoxicating liquor to wit: to one Ralph Pryor, she the said Grace Holland, not being the holder of a license to that effect still in force."

Prior to the arraignment in the Municipal Court, the defendant filed a motion to dismiss, stating therein that:

"1. There is no written statement under oath setting forth the essential facts constituting the offense charged;

"2. There is no warrant for arrest of the defendant;

"3. The information fails to properly charge an offense." This motion was denied and the trial proceeded. After a finding of guilt, the defendant appealed to this Court. After the appeal was lodged here a new Information was filed by the Attorney General in which the charge is stated as follows:

"The Attorney General of the State of Delaware on the 27th day of February, 1962, information makes that Grace Holland did commit a misdemeanor:

"Grace Holland on the 22nd day of November, 1962 in the County of New Castle did sell alcoholic liquor, to wit: six (6) 12 ounce cans of Schaefer Beer, to one Ralph Pryor, at 206 E. 6th Street, Wilmington, Delaware, the said Grace Holland not being the holder of a license to that effect still in force, contrary to Title 4, Section 901 (4) of the Delaware Code of 1953."

After the new Information was filed in this Court the defendant moved to dismiss such Information and to quash the criminal prosecution for the reasons that:

1. The Information fails to properly charge a criminal offense under the laws of the State of Delaware.

2. The defendant was illegally arrested without a warrant and, therefore, the prosecution should be quashed.

The facts surrounding the arrest and the commencement of the proceedings are set forth in an affidavit made by defendant and therein the defendant swears to the following facts:

"(1) That she is defendant in the above action.

"(2) That she was arrested without a warrant, and that after her arrest no written statement under oath setting forth the essential allegations of the alleged offense was made.

"(3) That at the time of the trial in the Municipal Court on this offense, Officer Pryor testified that he purchased certain beer from the defendant, and that thereafter, Officer Pryor went to another part of the house for other business and later came back to the room occupied by Grace Holland, and arrested her for the sale of alcoholic liquor without a license.

"(4) The officer testified that the arrest was made for the sale which took place in his presence before he left the room.

"(5) Your deponent verily believes that according to the police records in the State of Delaware, City of Wilmington, that there is no warrant for her arrest on this charge, and your deponent further verily believes that based on the testimony of the State's witnesses, there was no misdemeanor committed on view, so as to justify an arrest without a warrant, pursuant to the provisions of the Delaware Code." There was also an affidavit filed by the arresting officer. The essential facts of the two affidavits are not in dispute, except as to the length of time that elapsed between the sale and the arrest.

That portion of defendant's motion addressed to the facts surrounding her arrest will be considered first.

Even from defendant's affidavit it clearly appears that for the purposes of this motion the facts show she sold beer to a city policeman. She argues in her affidavit that "there was no misdemeanor committed on view so as to justify a warrant", but this is a conclusion of law and can be ignored; furthermore in another portion of her affidavit she concedes there was testimony under oath by the policeman that he purchased the beer from the defendant then "went to another part of the [defendant's] house and arrested her for the sale of alcoholic liquor without a license". The main thrust advanced on behalf of defendant is—

"* * *. While it may be argued that there was a misdemeanor committed in view, the law requires that the arrest be made at that time. If the arrest was made at some later time, as in the case herein, there is no misdemeanor on view, and the arrest is invalid. Thus, this proceeding was not begun in accordance with the law."

In the affidavit filed by the arresting policeman it is stated that the beer was sold to him by defendant at "approximately 10:35 P.M." and that "no more than fifteen minutes expired between the actual sale of the beer and the time of the arrest". The officer explains the delay in making the arrest was—

"* * * in order to gain evidence for other illegal vice activities of the defendant and other persons in said premises; * * *."

It seems possible the time lapse may have been longer but, as will be shown later, the time element is not critical.

Defendant relies almost entirely on the ruling of this Court in *Marshall v. Cleaver*, 4 Penn. 450, 56 A. 380 (Super. Ct. 1903), where the Court stated, 4 Penn. 452, 56 A. 381

that a person may be arrested "without a warrant for an offense committed in the presence and view of such officer, * * *". Here the sale of the beer by defendant to the city policeman must be regarded as having been the commission of a misdemeanor "in the presence and view of such officer"; Vol. 4, *Wharton's Criminal Law and Procedure*, § 1599, page 254, where it is said:

"An offense is considered as taking place within the view of an officer when his senses afford him knowledge that one is being committed. * * *."

In *Marshall v. Cleaver, supra*, at a later point on the same page the Court said:

"An arrest by a peace officer without warrant can only be made where the offense is committed in his presence and view, *and must be made at the time of the commission of the offense, or in the immediate pursuit of the offender*." (Emphasis supplied)

The only delay in making any arrest of defendant in this case was occasioned by the police officer searching defendant's premises "for other illegal vice activities of the defendant and other persons in said premises". This does not, in my opinion, invalidate in any wise the defendant's arrest. 11 *Del. C.* § 1906 provides that an officer may arrest for a misdemeanor without a warrant, if the misdemeanor is committed in his presence. Nothing is stated in the cited law which is a part of the Uniform Arrest Act, now Subchapter I, Chapter 19, Title 11 *Del. C.*, as to when the arrest must be made. Since the law of arrest in this state is now regulated by statute whatever may have been the rule at common law, and as stated in *Marshall v. Cleaver, supra*, is no longer material. When the General Assembly adopts a statutory scheme on a phase of our law, the provisions of the statute will control over any Court decision heretofore effective or applicable. See *Rickards v. State*, 6 Terry 573, 77 A. 2d 199, 203

(Sup. Ct. 1950), construing prior effective statutes on the law of arrest, and *De Salvatore v. State*, 2 Storey 500, 163 A. 2d 244 (Sup. Ct. 1960); *Halko v. State*, 175 A. 2d 42, 4 Storey 180;[1] *Cannon v. State*, 163 A. 2d 103, 5 Storey 284 and *Wilson v. State*, 10 Terry 37, 109 A. 2d 381 (Sup. Ct. 1954), construing provisions in the Uniform Arrest Act, 11 *Del. C.*, Ch. 19, Subchapter I, first adopted Vol. 48 *Del. Laws*, Ch. 304, approved June 5, 1951.

█ Since the arrest meets the terms of the statute now in effect, it would appear to be legal and it is not for the Court to read into or carve exceptions out of the statute. See *Perry v. Missouri Kansas Pipe Line Co.*, 22 Del. Ch. 33, 191 A. 823, 826 (Ct. of Ch. 1937), followed in *Appon et al. v. Belle Isle Corp., et al.*, 29 Del. Ch. 122, 136, 46 A. 2d 749 (Ct. of Ch. 1946), affirmed 29 Del. Ch. 554, 49 A. 2d 1 (Sup. Ct. 1946).

It may be noted that the Courts of Appeals for the Fifth Circuit, *Dailey v. U. S.*, 261 F. 2d 870, 872 (1959) and for the Second Circuit, *Carlo v. U. S.*, 286 F. 2d 841, 846 (1961) have said that delays in making arrests, pursuant to statutory authorization, do not ordinarily affect the legality of such arrests. Citation of some of the language used by the named Courts in the cited opinions will throw light on the reasoning adopted by this Court in the case at bar for upholding the arrest of the defendant, Grace Holland, and denying that part of the motion which assailed the validity of the arrest.

---

[1] In *Rickards v. State* (*Id.*) the Supreme Court said a "later statute in point of time must prevail" where the case presented involves what seems to be irreconcilable or contradictory statutes. In the cited case the Court applied § 5683, *Rev. C.* 1935 and held since is was adopted later than § 5173, *Rev. C.* 1935, "an amendment by implication of the prior Act necessarily follows". *Quaere*: Since the Uniform Arrest Act, 11 *Del. C.*, Ch. 19, Subchapter I and Title 21 *Del. C.* § 701 were re-adopted at the same time when the 1953 Code was enacted, if there is any contraction or irreconcilability between the two provisions, which will prevail?

In *Dailey v. U. S., supra,* the Court said, 261 F. 2d at page 872 (referring to the Federal Statute authorizing arrests "without warrant * * * where the violation is committed in the presence of the person making the arrest * * *". 26 U. S. C. A. § 7607):

"* * * The language of the Act is clear. There is no occasion therefore to complicate the problem; no need to speculate as to limitations that may or may not be implicit in the Act as we might ferret out the legislative history. The act is an obvious attempt to give law enforcement officers more latitude than they have had in making arrests without warrants. There is nothing in the statute requiring that an arrest be made immediately following the arresting officer's knowledge of probable cause for arrest. If an arresting officer has reasonable grounds to believe that a person has violated the narcotic laws, he may defer the arrest for a day, a week, two weeks, or perhaps longer. The narcotic traffic is dirty business. Detection of traffickers and collection of evidence is exceedingly difficult. It is within the province of Congress to avoid the necessity for a warrant, if to begin with there is reasonable ground for an arresting officer to believe that the person to be arrested has violated the narcotic laws. In this case the record shows that the agents had abundant grounds for such belief."

Circuit Judge Medina, in considering the same cited Federal statute, and speaking for the Court in *Carlo v. U. S., supra,* said, 2 Cir., 286 F. 2d at page 846:

"Delay by law enforcement officers in arresting a suspect does not ordinarily affect the legality of the arrest. Here the delay was three months, and we have no reason to suppose the arrest could have been made sooner than it was made. * * *."

Delay as such in effectuating some act written or prescribed by a section of the statute has not been regarded as affecting

the rights of an accused or otherwise in violation of the statute unless the act has not been carried out within the terms of the Uniform Arrest Act, 11 *Del. C.*, Ch. 19, Subchapter I. See *State v. De KoenigsWarter,* 177 A. 2d 344, 347, 4 Storey 388 (Super. Ct. 1962); *State v. Lasby,* 174 A. 2d 323, 326, 4 Storey 39 (Super Ct. 1961) and *State v. Klinehoffer,* 173 A. 2d 478, 480, 3 Storey 550 (Super Ct. 1961).

That part of defendant's motion attacking the validity of her arrest is denied.

I now proceed to consider that portion of the defendant's motion attacking the Information as failing "to properly charge a criminal offense under the laws of the State of Delaware". The defendant's objection is based on a contention that the State has not negatived a necessary "exception" in the statutory crime, so that makes the Information defective. This point will be fully considered later. The Court will first consider the Information.

The Information is set out in full at page 3, *supra.* The essence of the Information filed against the defendant charges that the said defendant committed a misdemeanor by selling:

"* * * six (6) twelve (12) ounce cans of Schaefer beer * * * the said Grace Holland not being the holder of a valid license to that effect still in force."

The Information alleges that this act, on the part of the defendant, was a violation of 4 *Del. C.* § 901(4), which provides:

"Whoever—

"* * * (4) Not being the holder of a proper and valid license, *or not being so authorized by this title,* sells any alcoholic liquor in this State * * *." (Emphasis supplied)

There is nothing in the Information tending to negative the italicized language. Because of this defendant contends

the Information is defective. The defendant argues "since the information does not allege that the defendant was not otherwise authorized to sell alcoholic liquor" the Information is insufficient since it does not validly allege a violation of the law, because Section 901(4) requires for its violation:

1. the sale of liquor;

2. Without a valid license so to do, or;

3. not being so authorized by this title.

The defendant contends all of these elements are descriptive of the offense, and notes the State has failed to allege one element of the crime, *i.e.* "or not being so authorized by this title", and even then goes on to argue that even under modern practice such a defect is fatal.

The defendant presses her argument by insisting that this language "not being so authorized by this title" (Title 4 *Del. C.*) was intended to protect employees of "licensees" under the law and points to Title 4 *Del. C.* § 522(d) (4) providing that licensees may not—

"* * * employ any individual less than 25 years of age in a position requiring the selling, handling or serving of alcoholic liquor unless *authorized* so to do by written order of the Commission." (Emphasis supplied)

Title 4 *Del. C.* § 732(a) and (b) is also cited. This section refers to manufacture and sales of perfumes, lotions and/or patent or proprietary medicinces, referred to in Title 4 *Del. C.*, Ch. 7 as "products [which contain] alcoholic liquor" but the Court is not impressed with any argument of relevancy of this cited material since a separate offense, Title 4 *Del. C.* § 901(6) is provided where there is an instance of the sale of such regulatory "products" in violation of all the provisions as set up in Title 4 *Del. C.*, Ch. 7, pertaining to the manufacture and sale of such products.

The Court is not impressed with the argument advanced by defendant as to the authorization which the Commission may give a licensee to employ an individual under 25 years of age, because as will appear later, the licenses which the Commission may issue are all restricted to the manufacture and/or sale of alcoholic liquors from or at designated premises. An individual under the age of 25 who may be "authorized" to be employed in the "selling, handling or serving of alcoholic liquor" must be an employee of a "licensee" who by the law is required to sell at a designated premise. The fact that the Commission may have "authorized" an "individual under the age of 25" to be employed in the selling, handling or serving "of alcoholic liquor" under a licensee who is required by the law to sell from or at designated premises, is immaterial. Such "individual" could not in any event sell or serve alcoholic liquor except at the licensee's premises, and for which the authority is given.

The State, on the other hand, argues that the words "or not being so authorized by this title", as they appear in 4 *Del. C.* § 901 (4) are, in fact, surplusage, since every section of the liquor laws of the State of Delaware relating to a sale of liquor require a license. Consequently, says the State, no provision is made in the statute giving any effect to the above quoted words.

The State points out that 4 *Del. C.* § 701 permits no sale to be made unless the person holds a license for that purpose; that Section 501 of the same title requires manufacturers and importers to have a license; that Section 511 thereof permits persons having a license to sell; that Sections 512, 513, 514, 515, 516, 517, 518, 519 and 520 authorize certain designated persons to sell alcoholic beverages only after they first procure a license for that purpose; and that Section 522 of said title requires an application for a license to purchase liquor for resale.

Thus, argues the State, it is to be readily seen that Title 5 of the *Delaware Code*, pertaining to alcoholic liquors, in every situation requires a license to permit a legal sale of alcoholic beverages, and that the words "or not being so authorized by this title" are really surplusage and need not be negatived. As already has been noted the Delaware law relating to the issuance of licenses for the manufacture and sale of alcoholic liquors all relate to premises designated in the application for a license. The Court has been unable to find and its attention has not been called to an instance where the law provides for issuance of a license for the manufacture or sale of alcoholic liquors to a person generally and without regards to a designated place of business in the conduct of the business.

Coming now to a determination of the validity of the defendant's attack on the sufficiency of the Information, since it charges a statutory crime which by the terms of the statute did not apply if the accused was "the holder of a proper and valid license" or was "authorized by this title" (Title 4 *Del. C.*) to sell any alcoholic liquor, it is to be first noted that Delaware has long required the negativing of an exception to be found in the charging part of an Information involving a statutory crime. *Silver v. Rhoads*, 2 Harr. 369 (Super. Ct. 1837); *Socum v. State*, 1 Houst. 204 (Super. Ct. 1956); *State v. Jones*, 4 Penn. 109, 53 A. 858 (Gen. Sess. 1902); *Mott v. State*, 5 Penn. 474, 62 A. 301 (Sup. Ct. 1905); but compare *State v. Brown*, 3 Boyce 499, 85 A. 797 (Gen. Sess. 1912); *State v. Witsil*, 3 W. W. Harr. 30, 129 A. 862 (Gen. Sess. 1925) and *State v. Sockum*, 6 Boyce 350, 99 A. 833 (Gen. Sess. 1917) and see also *Silver v. Rhoads, supra,* and *Brinkley v. Jackson*, 2 Houst. 71 (Super. Ct. 1859).

*State v. Sockum, supra,* involved carrying a concealed deadly weapon. The statute, § 262 *Rev. Code.* 1915, provided for licensing persons to carry a concealed deadly weapon by

following a given procedure. The Court properly held it was not for an accused to require the State to prove he was licensed to carry such weapons,—it was a matter of defense.

In the other cases, such as *Silver v. Rhoads, supra,* and *State v. Witsel, supra,* the Court ruled that the juxtaposition of the section defining the crime and the section setting forth the exceptions was important. For instance in *State v. Witsil,* 3 W. W. Harr. 30 at page 32 and 33, 129 A. 862, at page 863, the Court said:

"The statute with which we are dealing, in clear and definite language makes it unlawful for any person to transport to any place within the state of Delaware, any liquors as therein defined, without any exceptions thereto, followed by the penalty for the first and second offenses; it is true that a subsequent portion of the same section contains certain exceptions to the operation of the statute; these exceptions, however, not only do not appear in that portion of the section which is descriptive of the offense charged, but are separated from it by certain provisions as to the penalty.

\*    \*    \*    \*    \*    \*

"No hardship is placed upon the defendant by holding that it was not necessary to allege in the indictment that the transportation was not for the purpose set out in the latter part of section 4 of the statute, because if the liquor was being so transported it was certainly within the knowledge of the defendant, and could be brought out as a matter of defense.

"The court is unable to see what advantage it would have been to the defendant, if the indictment had contained such allegations as are contended for by his counsel; the offense with which he is charged is clearly stated, and he could have shown in defense anything which under the provisions of the statute would have made his actions legal."

The problem presented here is entirely different,—the

language "or not being so authorized by this title"—seems to serve no purpose; at least the Court's attention has not been called to any purpose. It is difficult to comprehend how the State could, at trial, prove the want of authority on the part of the defendant to have sold the 6 cans of beer to the city policeman. It would be routine for the State to prove— if such is the case—that defendant is not "the holder of a license" or that the sale was not at "licensed premises", but as stated, what proof could the State adduce—or should be required to adduce—to show no "authority" in defendant to sell alcoholic liquor "by this title", Title 4 *Del. C.*, 1953— particularly in light of the fact the language "or not being so authorized by this title" apparently serves no useful purpose. The Court is therefore forced to regard the quoted language as "surplusage" since it serves no purpose.

■ A Court may disregard surplusage in a statute. The general rule is stated in 82 *C. J. S.* Statutes § 343 (1953), on pages 687, 688:

"While, as a general rule, every word in a statute is to be given force and effect, as discussed *infra* § 346, unnecessary words or clauses, words inadvertently or mistakenly used, words to which no meaning at all can be attached, or words having no meaning in harmony with the legislative intent as collected from the entire act will be treated as surplusage, and will be wholly disregarded in the construction of the act in order to effectuate the legislative intent."

The rule has been applied to criminal cases.

In *Burnette v. Commonwealth*, 194 Va. 785, 75 S. E. 2d 482 (Va. Sup. Ct. App., 1953) the Virginia Supreme Court of Appeals held that there was surplusage in a burglary statute and the surplusage could be ignored in determining its meaning. The Virginia Court said at 75 S. E. 2d at pages 484, 485:

"* * * This principle of construing legislative acts is in accord with the following general rule: 'It is the duty of the courts to give effect, if possible, to every word of the written law. But if a word or clause be found in a statute which appears to have been inserted through inadvertence or mistake, and which is incapable of sensible meaning, or which is repugnant to the rest of the act and tends to nullify it, and if the statute is complete and sensible without it, such word or clause may be rejected as surplusage.' * * *"

In *Wright v. People,* 116 Colo. 306, 181 P. 2d 447 (Colo. Sup. Ct., 1947), the Court regarded as surplusage language in a statute which had been omitted in an Information charging violation of a confidence game statute. The language, at first blush, appeared to be contradictory and even meaningless and that probably caused the Court to reach the result. The case is not in point; it only illustrates the idea that a Court is not required to give effect to apparently "meaningless" language in a statute.

Our Supreme Court in *Mayor and Council of Wilmington v. State,* 5 Terry (44 Del.) 332, 57 A. 2d 70 (Del. Sup. Ct. 1947), held a portion of an act dealing with the Board of Education to be surplusage and indicated it was to be disregarded.

Although the above cases were decided by Appellate Courts, there seems no reason why a *nisi prius* Court cannot hold a portion of a statute to be surplusage, if that is the fact. This is clearly indicated in the cases cited above.

A search of the digests and treatises like *Wharton's Criminal Law and Procedure,* see Vol. 4 (Anderson Ed.) §§ 1800 and 1801; 42 *C. J. S.* Indictments and Informations § 140, and 27 *Am. Jur.*—Indictments and Informations—§§ 106-107, and cases cited therein, does not help; no case, with the possible exception of *Morris v. U. S.,* 161 F. 672, 679 (C. C. A. 8, 1908), seems apposite.

The Court of Appeals in the cited case said of the exception found in the statute, there under consideration:

"The exception is peculiar, if not a misconception. Clearly enough, it has no relation to the act of selling, as it would be a legal absurdity to speak of a person selling, or vending 'for his own family table,' as the law expects a man to provide for his own table. And it would be more absurd to speak of a person selling an article without compensation, as the term 'sell' implies for a consideration. The exception, therefore, has exclusive reference to the word 'furnished.' It would challenge our conception of the constitutional powers of Congress for it to undertake to tax a person as a manufacturer of oleomargarine whose housewife, as a matter of fancy or taste, should color white oleomargarine so as to give it the hue of yellow butter, for the sole use of the family table. * * * Evidently, the exception in question was interpolated through an over-zealous regard for the reserved rights of the citizen. But it excepted from the operation of the statute nothing for which the defendant could have been prosecuted as for the violation of a federal statute. And, therefore, it may be treated as mere surplusage, and disregarded in framing an indictment, upon the section for carrying on the business of a manufacturer of oleomargarine without having paid the government tax."

See, however, *Morris v. U. S.*, 8 Cir., 168 F. 682, an opinion on reargument in the same case. What was said on rehearing did not affect or detract from the ruling on the point noted in the first opinion.

This Court has been unable to find any other case which has considered an Indictment or Information charging a statutory crime with a so-called exception clause therein, which on examination resembled the situation presented or appeared to have language that could be regarded as meaningless. The cases touching on the question of negativing exceptions in a statutory crime generally do not seem precedents in

light of the facts presented under the analysis and construction which the Court has placed on the statute here under construction.

■ Since the Court has determined the words referred to in Title 4 *Del. C.* § 901(4), i.e., "or not being so authorized by this title", must be regarded as surplusage they need not be negatived, and the conclusion follows that the Criminal Information, as filed, was sufficient.

The Court holds that the Attorney General complied with the requirements of an Indictment or Criminal Information involving a statutory crime, as recently considered by the Supreme Court in *State v. Deedon*, Del., 189 A. 2d 660.

Defendant's motion addressed to the Information is, therefore, denied.