STATE OF DELAWARE v. CHARLES MALCOM.

(*September* 9, 1964)

LYNCH, J. sitting.

*B. Wilson Redfearn,* Deputy Attorney-General, for the State of Delaware.

*Richard Allen Paul* (of Wise & Suddard), for defendant.

Superior Court of Delaware, New Castle, No. 525, 1964.

LYNCH, Judge.

Defendant stands indicted for burglary, third degree (11 *Del. C.* Sec. 394, as amended), in that he did feloniously break and enter the dwelling house of Alfred Longobardi of Minquadale, with intent to commit larceny therein. Longobardi's home is at 24 Erie Avenue, Minquadale; defendant's home is at 17 Erie Avenue, Minquadale.

On March 27, 1964[1] Detective Frederick Hurlburt, of the Delaware State Police, went to defendant's home, without a search warrant, while defendant was not at home. He knocked on a rear door. Thereafter he was admitted to defendant's home, with the consent of defendant's son, Albert, age 16, and the consent of defendant's mother. Defendant has given no consent to the Detective's entry or the subsequent search of defendant's home.

In connection with his entry into defendant's home Detective Hurlburt identified himself as a State Policeman and showed his credentials. After being permitted to enter defendant's home he stated his purpose, and he asked for permission to search defendant's home, to seek some men's clothing, allegedly stolen from the Longobardi home.

At the hearing it was clearly proven, and I so find, that defendant's son and mother admitted Detective Hurlburt to defendant's home with knowledge of who he was and consented to his searching the

---

[1]The offense was allegedly committed March 24, 1964.

premises after the detective stated the reason for his being therein. In the course of his search he found the allegedly stolen clothes in a closet in the son's room in defendant's home.

Defendant's son, Albert, conceded that his father had brought the clothes to his home two or three nights before the detective came to defendant's home and that he had not been back to the home since then. The son testified that after the defendant brought the clothes to his home, he laid them on the son's bed, then he went out again, got in an automobile and drove off and that he had not been back home since then. The detective acted at all times in a gentlemanly manner and no complaint was made of any unseeming conduct on his part. It is not contended that he used any force, or duress or trickery either to obtain consent to his entrance to defendant's home or in obtaining consent to making the search of the home. It was shown that the son knew that the clothing had been stolen. He clearly and unhesitatingly stated that.

In short, the evidence clearly shows that the officer identified himself, he made known the purpose of his coming to defendant's home—saying he was looking for "stolen property"—following which permission was asked to enter and to make the search, and the consent was given by a mature woman, who had been in charge of defendant's home for at least two or three days before the detective came to defendant's home, and while defendant was not coming to his home.

Defendant's attorney has argued that Mrs. Malcom, defendant's mother, was elderly, half blind and deaf, and thus should not be held competent to give any consent. In the course of the hearing, the Court noted the conduct of Mrs. Malcom on and off the stand. While on the stand she seemed to be trying to make it appear her hearing and/or sight were impaired.

My notes of her conduct and her testimony show I was impressed with the fact that when she was acting "on her own," she acted intelligently and that her sight and hearing seemed adequate. My notes further reflect that she participated in a number of whispered conferences at the defendant's counsel table, when the voices were so

low that I was unable to make out the substance of the conversations; that on at least two occasions she had come to the counsel table, after defendant and/or his counsel had beckoned her to come to the counsel table from the spectators' seats in Court Room No. 2. She was able to make out the motions that caused her to approach the counsel table. Her sight was good enough for this.

These circumstances convince me Mrs. Malcom had adequate sight and hearing, notwithstanding an apparent effort to have the Court believe she suffered from impaired sight and/or hearing, and I want to make it plain I was never impressed with this argument. The Court finds Mrs. Malcom was wholly competent and fully comprehended the detective's identification of himself before he was permitted to enter and was aware at all times of the purpose of his mission at and in defendant's home.

Counsel has stated in his memorandum the precise point advanced by defendant—

"The precise legal question for determination is whether the persons present, i. e. Mrs. Malcom and Albert Malcom, could legally consent to a search."

The constitutional immunity from unreasonable searches and seizures is not applicable if consent was given to the making of the search. On *Lee v. United States*, 343 U.S.747, 751, 72 S.Ct. 967, 971, 96 L.Ed. 1270 (1952); see also 79 C.J.S. Searches and Seizures Sec. 62, p. 817; 47 Am. Jur.—Searches and Seizures—Secs. 71 and 72.

It has been held that evidence taken pursuant to a consent to a search is admissible in evidence; see further *Zap v. United States*, 328 U.S. 624, 629, 66 S.Ct. 1277, 1279, 90 L.Ed. 1477 (1946); *United States v. Quinn*, D.C., 17 F.R.D. 342, 343 (1955); *Monroe v. Pape*, D.C., 221 F.Supp. 635, 648 (1963).

It is stated in 47 Am. Jur. Sec. 72, p. 548:

"The cases seemingly indicate that consent to a search of premises need not necessarily be obtained from their owner, but is sufficient if it comes from some duly authorized person in possession of the premises. Thus, it has been held that if officers armed with a search warrant, on presenting it at the home of one accused of crime, are invited by his mother to enter and search the premises, so that they do not act under the warrant, evidence obtained during the search is not illegally obtained although the act may have been a trespass as against the defendant. * * *."

In a number of cases, the power of a person's mother or father to give consent to a search of the person's premises has been recognized and the search held valid, see *Gray v. Commonwealth*, 198 Ky. 610, 249 S.W. 769 (mother); *Morris v. Commonwealth*, 306 Ky. 349, 208 S.W.2d 58 (1948) (father); *State v. Hagan*, 47 Idaho 315, 274 P. 628 (1929) (mother); *Tomlinson v. State*, 129 Fla. 658, 176 So. 543 (1937) (father); and *State v. Fowler*, 172 N.C. 905, 90 S.E. 408 (1916) (sister). Evidence taken under such sets of facts has been ruled admissible, notwithstanding the accused was not at home and did not give his consent to the search and seizure.

In *People v. Misquez*, 152 Cal. App.2d 471, 313 P.2d 206, 211 (1957) it was ruled evidence taken in a search—without a search warrant—but which search was consented to by a baby sitter who was in charge of the premises, could legally be received in evidence of a prosecution for murder. In sustaining the conviction over the objection that the search was unlawful, the California District Court of Appeals stated (p. 211):

"The officer testified that he did not remember asking either defendant or Mrs. Rafferty for the key to the apartment. He obtained the key from either defendant's sister or Mrs. Baker, the babysitter, who were together at the police station. He told them that he wanted to search the apartment and neither woman objected to giving him the key. Defendant and Mrs. Rafferty were in custody at this time. Although defendant testified that he did not consent to a search he asked that the key be given to Mrs. Baker, and it is reasonable to

assume that he wanted her to have access to the apartment so as to look after the children. Mrs. Baker could reasonably suppose that possession of the key gave her some control over the premises and that she was authorized to permit the officer to enter. It was also reasonable for the deputy to suppose that since Mrs. Baker had the key, she had the authority which she purported to have, and it was not unreasonable for him to act accordingly. Since he acted in good faith and with her permission in making the search, the evidence obtained thereby was not to be excluded because he might have made a mistake as to the actual extent of her authority. *People v. Gorg,* 45 Cal.2d 776, 291 P.2d 469; *People v. Caritativo,* 46 Cal.2d 68, 292 P.2d 513. * * *."

The principle of this case continues to be recognized, see *People v. Corrao,* 201 Cal. App.2d 848, 20 Cal.Rptr. 492, 495 and *Bielicki v. Superior Court,* 57 Cal.2d 602, 21 Cal.Rptr. 552, 555, 371 P.2d 288 (1962). At page 555 of the cited report there is a footnote collecting a number of cases dealing with the power of another person to give consent to a search of an accused's premises and among the cases collected are instances where the consent was granted by the defendant's "mistress," a housemaster of a campus dormitory, a defendant's sister-in-law, even the brother of the defendant's "mistress," it appearing that he was a co-occupant of defendant's home.

It goes without saying that if the State had to rely on the consent of the minor son necessarily I would have to hold that such consent would be insufficient, compare *People v. Jennings,* 142 Cal.App.2d 160, 298 P.2d 56, 61 (1956) where the consent to search had been allegedly given by minor daughters of the accused, one aged 15 years and the other aged 17 years. In the cited case the Court said:

"* * *. Respondent here contends that consent was shown. We think not. The consent, of course, must be that of the man whose house is searched or that of someone able to speak for him. It is mere pretense under the circumstances shown here to claim that the two minor daughters could give or had given consent to the search of their father's residence. It is idle to suppose that they would have in any way interfered with the police officer searching the house. They knew their

father had been arrested, was in jail and charged with a serious crime. They had been questioned for hours before the search was made. There is no showing whatsoever that consent was even asked. What is shown is that after hours of questioning the officer simply searched the house, and the fact that he was accompanied by the older girl proves nothing in the way of consent. * *."

See also *Waldron v. United States*, 95 U.S. App. D.C. 66, 219 F.2d 37, 39 (1955).

It has been held that there are "circumstances under which the immunity [from search and seizure] may be waived by another." In *Gillars v. United States*, 87 U.S. App. D.C. 16, 182 F.2d 962, 973 (1950), radio records and transcripts belonging to accused had been seized by a government agent, who was permitted by a superintendent of a building to enter a room where the records and transcripts had been stored, after the door to the room was opened by the superintendent. After entering the room the government agent was permitted to take the records and transcripts. The opinion makes this observation:

"* * *. From all that appears the obtaining of the records was consented to by the one who had custody of them. No objection was made and no force appears to have been used. * * *."

See also *Stein v. United States*, 166 F.2d 851, 855 (C.C.A. 9, 1948) citing and relying on *Harris v. United States*, 331 U.S. 145, 154–155, 67 S.Ct. 1098, 1103, 91 L.Ed. 1399 (U.S.Sup. Ct., 1947). See further *United States v. Eldridge*, 302 F.2d 463, 465 (C.C.A. 4, 1962) and *Sartain v. United States*, 9 Cir., 303 F.2d 859, 862–863.

When one considers the factual background and aspects of defendant's petition, it clearly appears that the State has sustained the burden of showing the search was reasonable in light of the consent given, compare *State v. De Koenigswarter*, 4 Storey 388, 177 A.2d 344, 346 (Superior Court, 1962) and that there was no duress or coercion.

The petition to suppress is denied. An order to such effect will be entered on presentation.